Michael L. SHAKMAN et al., Plaintiffs
and Petitioners-Appellees,

v.

DEMOCRATIC ORGANIZATION OF
COOK COUNTY et al., Defendants,

and

City of Chicago and Michael Cardilli,
Respondents-Appellants.

No. 75–1666.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 5, 1976.

Decided April 9, 1976.

**346**

William R. Quinlan, Corp. Counsel, Richard F. Friedman and Daniel Pascale, Asst. Corp. Counsel, Chicago, Ill., for respondents-appellants.

C. Richard Johnson, Roger R. Fross, Robert Plotkin, Chicago, Ill., for appellees.

Before CASTLE, Senior Circuit Judge, and CUMMINGS and SPRECHER, Circuit Judges.

CASTLE, Senior Circuit Judge.

Respondents appeal from the district court's determination of civil contempt entered against each of them for violating the injunctive provisions of the court's judgment of May 5, 1972, generally prohibiting certain various Illinois political organizations, governmental units, and their officers, agents and employees from compelling or coercing any governmental employee to take part in any political activity as a condition of employment. Plaintiffs-petitioners are representatives of a class composed of the voters of the counties comprising the Northern District of Illinois. Respondents are the City of Chicago, a defendant in the original action, and Michael Cardilli, who at the time of the violations held the position of Director of Administration of the Department of Streets and Sanitation of the City of Chicago.

I.

This appeal is the outgrowth of a class action first instituted by plaintiffs in 1970 and aimed at the political patronage employment systems and practices alleged to prevail in the counties which comprise the Northern District of Illinois.[1]

After this court reversed the district court's dismissal of the plaintiffs' original complaint (*Shakman v. Democratic Organization of Cook County*, 435 F.2d 267 (7th Cir. 1970)), various defendants including respondent City of Chicago, agreed to the entry of a judgment in settlement of a part of the case. After a class action hearing, the district court entered judgment on May 5, 1972. The judgment provides that public employees, once hired, are not to be subjected to political requirements in connection with their jobs.[2] The injunctive provisions of the judgment prohibit those bound by the decree from permitting political activity to be undertaken on public time and also enjoins "conditioning, basing, or affecting any term or aspect of governmental employment on any political purpose."[3] The

---

1. A detailed examination of the complaint can be found in this court's earlier decision in this case. See *Shakman v. Democratic Organization of Cook County*, 435 F.2d 267 (7th Cir. 1970).

2. Paragraph D of the judgment provides in part:

    [A]ll compulsory or coerced political activity by any governmental employee are prohibited, and, once hired, a governmental employee is free from all compulsory political requirements in connection with his employment. . . .

3. Paragraph E of the judgment provides:

    E. Each and all of the defendants and others named or referred to in paragraph C above are permanently enjoined from directly or indirectly, in whole or in part:

    (1) conditioning, basing or knowingly prejudicing or affecting any term or aspect of governmental employment, with respect to one who is at the time already a governmental employee, upon or because of any political reason or factor.

    (2) knowingly causing or permitting any employee to do any partisan political work during the regular working hours of his or her governmental employment, or during time paid for by public funds; provided that nothing contained in this subparagraph (2) shall prohibit governmental employees from voluntarily using vacation time, personal leave time or from taking nonpaid leaves of absence to do political work, but permission to do so must be granted nondiscriminatorily.

    (3) knowingly inducing, aiding, abetting, participating in, cooperating with or encouraging the commission of any act which is proscribed by this paragraph E, or threatening to commit any such act.

judgment is binding upon various defendants, including the respondent City, who consented to its entry. The judgment also provides that, among others, it is binding upon "the present and future officers, members, agents, servants, employees and attorneys of each of the defendants."[4]

Pursuant to paragraph H of the judgment,[5] plaintiffs filed a petition for a rule to show cause why Edward Quigley and James Simpson should not be held in civil contempt of court for violating subsections 1 and 2 of paragraph E of the judgment. This petition was subsequently supplemented to add the City of Chicago and Michael Cardilli. The petition was based on the affidavit of United States Congressman Ralph Metcalfe. In the affidavit, Representative Metcalfe swore to the following facts. As the Democratic party committeeman of the Third Ward of Chicago, Representative Metcalfe "sponsored" many persons for employment with various governmental agencies of the City and County headed or controlled by members of the Democratic party. In early December of 1974, Representative Metcalfe announced that he would neither endorse nor organize the circulation of petitions for any candidate for the office of Mayor of the City of Chicago in the upcoming primary election. He was later advised that on December 18 and 19, 1974, numerous individuals associated with the Democratic organization of the Third Ward and employed by agencies of the City or County were summoned by their superiors to report to them during working hours. In particular, Edward Quigley, Deputy Commissioner of Sewers for the Bureau

of the City met with his employees and requested that they circulate petitions of candidacy for Mayor Richard J. Daley. Also, James Simpson, Assistant General Superintendent of the Bureau of Streets and Sanitation of the City reportedly met with numerous of his employees and requested that they circulate such petitions. Representative Metcalfe also stated in his affidavit that many members of the Third Ward Democratic Organization told him that they did not want to circulate the petitions but felt that they would be terminated or otherwise discriminated against if they refused.

Upon deposing Simpson, plaintiffs learned that respondent Cardilli had interviewed many employees of his department during working hours and requested them to circulate similar petitions. Plaintiffs thereupon supplemented their original petition and added Cardilli as a respondent. In addition, plaintiffs added the City of Chicago as a respondent on the ground that as a defendant in the original action and employer of the three individuals named in the petition for a rule to show cause, it should be held responsible for their actions. Thereafter plaintiffs dropped Simpson from their petition. Respondents' motion to dismiss the petition was denied and a hearing was subsequently held.

At the hearing, George Jones testified that he and four other co-workers in the Streets and Sanitation Department reported to Simpson's office during working hours on December 19, 1974 after being summoned the previous day. Each of the five had been "sponsored" by Representative Metcalfe. He testified that they were tak-

---

4. Paragraph C of judgment of May 5, 1972. The paragraph also provides that in addition "all others in active concert or participation with any of the defendants . . . who receive actual notice of this judgment by personal service or otherwise" are bound. *Compare* Fed.R.Civ.P. 65(d).

5. Paragraph H of the judgment provides:
   Jurisdiction is retained for the following purposes:
   (2) To enable the parties to this Judgment to apply to this Court at any time for such further orders and directions as may be necessary or appropriate for the construction or

carrying out of this Judgment, for the enforcement of compliance with the provisions contained herein, and for the punishment of the violation of any of such provisions. Application to enforce such provisions or to impose punishment for any such violation may be presented to this Court by any registered voter. . . .

This paragraph also provides that the district court retains jurisdiction to resolve remaining issues in the case, including the lawfulness of the practices presently enjoined. Proceedings with respect to those issues are currently pending in the district court.

en in one at a time to see Cardilli. Cardilli's administrative assistant was also present. Jones testified that Cardilli asked him if he would take and circulate petitions of candidacy for Mayor Daley. After being asked twice, Jones responded "Why? What would happen if I don't?" Cardilli then repeated "Are you going to take them?" Jones thereupon did.

Respondents City and Cardilli stipulated that Jones' testimony was true as relating to the events concerning not only himself but also of his four co-workers. It was also stipulated that the official petitions of candidacy for Mayor Daley had been filed with the Board of Election Commissioners prior to 8:20 a. m. on December 18, 1974 and thus before these employees were asked to circulate them.

At the conclusion of the evidence, the court discharged Quigley and found the City and Cardilli in civil contempt of court. The court found that since Mayor Daley's petitions of candidacy were filed prior to the time the five workers were summoned to report to Cardilli, the purpose of calling the employees to City Hall and urging them to take the petitions "was to determine whether they would support Mayor Daley's candidacy and/or to coerce and intimidate them by making clear that their departmental superiors, who controlled their jobs, expected them to support Mayor Daley's candidacy." Thus the court found the City and Cardilli in violation of paragraph E of the 1972 judgment.

The court asked plaintiffs to submit a bill of costs and suggest whatever further sanctions they believed necessary. The court awarded costs and attorney fees to plaintiffs[6] but denied their suggestion that the court pursue criminal contempt proceedings against respondents.

## II.

Respondents raise various arguments on appeal in support of their contention that the district court erred in holding each of them in contempt.

## A.

Their first argument is grounded upon the distinction between civil and criminal contempt. Respondents maintain that they were found in *civil* contempt for conduct which could only be found contemptuous after a *criminal* proceeding.

Respondents argue that "past performance of an affirmative act violating a prohibitory order of the court" constitutes *criminal* contempt and therefore it was erroneous for the district court to find Cardilli's actions on December 18 and 19, 1974 in *civil* contempt of court. Respondents thus advance a standard in which the nature of the contemptuous act is determinative of whether a contemnor has committed civil or criminal contempt.

▮ Respondents' proffered distinguishing test is erroneous and attempts to oversimplify a most difficult problem. The distinction between civil and criminal contempt cannot turn on the nature of the *act,* since as the Supreme Court has pointed out, "[c]ommon sense would recognize that conduct can amount to both civil and criminal contempt." *United States v. United Mine Workers,* 330 U.S. 258, 298–99, 67 S.Ct. 677, 698, 91 L.Ed. 884, 915 (1947). And as the Court stated over a half century ago, "[c]ontempts are neither wholly civil nor altogether criminal. And 'it may not always be easy to classify a particular act as belonging to either one of these two classes. It may partake of the characteristics of both.'" *Gompers v. Bucks Stove and Range Company,* 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797, 806 (1911), quoting *Bessette v. W. B. Conkey Company,* 194 U.S. 324, 329, 24 S.Ct. 665, 667, 48 L.Ed. 997, 1002 (1904). See also *Backo v. Carpenters' Local 281,* 308 F.Supp. 172, 175 (N.D.N.Y. 1969), *aff'd,* 438 F.2d 176 (2d Cir. 1970), *cert. denied,* 404 U.S. 858, 92 S.Ct. 110, 30 L.Ed.2d 99 (1971).

▮ The "real distinction between criminal and civil contempt is the nature of the

---

**6.** Costs in the amount of $1174.38 were assessed jointly against the City and Cardilli and attorneys' fees in the amount of $8560.00 were assessed solely against the City.

relief asked and the purpose of that relief." 3 C. Wright, Federal Practice & Procedure § 704, at 159 (1969); see also *In re Persico*, 491 F.2d 1156 (2d Cir. 1974), *cert. denied*, 419 U.S. 924, 95 S.Ct. 199, 42 L.Ed.2d 158 (1974); *Southern Railway Company v. Lanham*, 403 F.2d 119, 124 (5th Cir. 1968); Comment, *Right to Trial in Contempt Cases: A Critical View of the Sentence Aggregation Rules*, 70 Nw.U.L.Rev. 533, 534 n.3 (1975). In *Gompers v. Bucks Stove and Range Company, supra*, the Court stated that distinction in the following terms:

> If [the proceeding is brought] for civil contempt the punishment is remedial, and for the benefit of complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court. [*Id.* 221 U.S. at 441, 31 S.Ct. at 498, 55 L.Ed. at 806.]

Cf. *Kienle v. Jewel Tea Company*, 222 F.2d 98, 99 (7th Cir. 1955); *United States v. Joyce*, 498 F.2d 592 (7th Cir. 1974). Thus while the penalty for criminal contempt is intended to be punitive only, *United States v. United Mine Workers, supra*, 330 U.S. at 302, 67 S.Ct. at 700, 91 L.Ed. at 917, the sanctions for civil contempt are "employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, [or] to compensate the complainant for losses sustained." *Id.* at 303–04, 67 S.Ct. at 701, 91 L.Ed. at 918.[7]

In the instant case, therefore, we must determine the nature of the relief sought by plaintiffs. But such a determination is not necessarily a simple task. Frequently the punitive or remedial nature of the relief sought is readily disclosed by the pleading's averments or by the type of relief prayed for. See, e. g., *Kienle v. Jewel Tea Company, supra.* But other times the pleadings are of little assistance; the averments may be sketchy and the relief sought may be appropriate for either criminal or civil contempt.[8] In such a situation, a court is compelled to journey outside the pleadings and determine the purpose for which plaintiff sought to have the respondent held in contempt. Thus if plaintiff's purpose was to punish a defiance of the court's authority, the relief sought, whatever its form, is punitive. But if his purpose is to assure future compliance or to compensate himself for injury caused by the respondent's violation of the injunction, then the nature of the relief is remedial.

In the instant case, the pleadings alone do not convey whether plaintiffs intended the relief they sought to be punitive or remedial, and the forms of relief sought are not distinctly either punitive or remedi-

---

7. The Court in *Gompers* did point out that the nature of the contemptuous conduct—"refusing to do an act commanded" as opposed to "doing an act prohibited"—*generally* "affords a test by which to determine the character of the punishment." 221 U.S. at 443, 31 S.Ct. at 499, 55 L.Ed. at 807. Also, the Fifth Circuit in *Skinner v. White*, 505 F.2d 685 (5th Cir. 1974), has stated that among the "essential distinctions" between civil and criminal contempt is that "civil contempt lies for refusal to do a commanded act, while criminal contempt lies for doing some forbidden act." *Id.* at 688. Use of such a standard to distinguish the two has been criticized as being of little utility. See Dobbs, *Contempt of Court: A Survey*, 56 Cornell L.Rev. 183, 240 (1971), where the commentator also maintains that

> [t]he distinction between mandatory and prohibitory orders in *Gompers* . . . was not intended to be a major test; rather it was merely indicative of cases which contempt sanctions could be coercive and hence civil.

*Id.* The Court itself pointed out in *Gompers* that a remedial fine could be imposed for "doing an act prohibited." Thus the distinction respondents insist upon, while based on language in judicial decisions, is not the crucial one. See generally 3 C. Wright, Federal Practice & Procedure § 704, at 159 (1969); 4 Barron & Holtzoff, Federal Practice & Procedure § 2422, at 371–72 (1951); R. Goldfarb, The Contempt Power 49–67 (1969).

8. For instance, imprisonment may be appropriate relief for civil or criminal contempt; the only difference being that imprisonment for civil contempt must be conditional. *Scott v. Hunt Oil Company*, 398 F.2d 810 (5th Cir. 1968). Similarly, a "fine" may be appropriate for either; the only distinction being that in civil contempt it must be compensatory. *United States v. United Mine Workers, supra*, 330 U.S. at 304, 67 S.Ct. at 701, 91 L.Ed. at 918; see also *Coca Cola Company v. Bisignano*, 343 F.Supp. 263, 264 (S.D.Iowa 1972); *Dakota Corp. v. Slope County*, 75 F.2d 584, 586 (8th Cir. 1935).

al in nature.[9]  Hence, we must examine the events and circumstances leading up to and surrounding the filing of plaintiffs' petition in order to discern their purpose in initiating the contempt proceedings against respondents.  In so doing, we are led to the inescapable conclusion that plaintiffs were clearly seeking remedial relief to assure future compliance with the district court's 1972 judgment and thus the court properly found respondents in civil contempt of court.

█  In late 1974 and early 1975, Chicago was in the midst of an election campaign involving numerous city-wide offices.  In probable anticipation of problems, plaintiffs asked the district court in December of 1974 to order the City and other defendants to distribute additional notices of the 1972 judgment to their employees.  Shortly thereafter plaintiffs learned of Cardilli's conduct of December 18 and 19, 1974 and sought to have him and the City held in contempt.  As the election grew closer and the campaign intensified, the fear and possibility of further violations of the 1972 judgment obviously increased.  In light of these events and circumstances, the reasonable conclusion is that the plaintiffs initiated contempt proceedings to assure future compliance during the remaining highly critical time before the city election.  Thus the nature of relief sought against Cardilli and the City was not necessarily to punish the "past completed acts" of December 18 and 19, 1974, but rather to coerce both respondents, as well as others bound by the 1972 judgment, to comply with the injunction in the future, and specifically during the time remaining before the election.  Therefore, since plaintiffs' purpose in seeking relief in contempt proceedings was to coerce future compliance, the district court properly found respondents in *civil* contempt of court.

### B.

Also in this regard, respondents maintain that they were unable to determine the "true character of the proceedings" due to its "mélange of civil and criminal traits," citing *Skinner v. White,* 505 F.2d 685 (5th Cir. 1974).  We fail to see any such "mélange of civil and criminal traits" in the contempt proceeding under review before us.  Plaintiffs' petition expressly stated that they sought to have respondents held in *civil* contempt, and the nature and purpose of the relief sought, as well as the forms of relief themselves, as stated *supra,* were all appropriate for a civil contempt proceeding.  And of course, since we find that the proceedings were clearly civil in nature, respondents' further argument that they were denied the procedural safeguards concomitant with criminal contempt proceedings totally lacks merit.  Respondents here were not "left in doubt as to whether relief or punishment was the object in view."  *Gompers v. Bucks Stove and Range Company, supra,* 221 U.S. at 446, 31 S.Ct. at 500, 55 L.Ed. at 808.

**9.** Plaintiffs' petition included the following prayer for relief:

> If upon proper hearing it is determined that [any of the respondents] is in contempt of court, plaintiffs will request the Court to fix a fine to be imposed on such person(s), will ask the Court to impose conditions to purge the contempt, will move the Court to enter additional relief to enforce and to prevent violations of the Judgment by officials of defendant City of Chicago, and will ask for costs and disbursements and a reasonable counsel fee.

Nothing in this prayer for relief is solely punitive in nature.  As pointed out in note 8 *supra,* a "fine" may be remedial as long as it is compensatory.  Nothing in the pleading or else-where in the record ·sheds any light on the injury or amount of injury sought to be compensated.  But this is of no consequence since the district court refused to impose any "fine."  Plaintiffs' prayer for additional relief to enforce the judgment and conditions to purge the contempt were also clearly appropriate for civil contempt.  See *United States v. Greyhound Corp.,* 370 F.Supp. 881, 886 (N.D.Ill.1974); *aff'd,* 508 F.2d 529 (7th Cir. 1974); *Backo v. Carpenters' Local 281,* 438 F.2d 176, 182 (2d Cir. 1970), *cert. denied,* 404 U.S. 858, 92 S.Ct. 110, 30 L.Ed.2d 99 (1971).  And a request for an award of costs and reasonable attorneys' fees was proper.  *W. E. Bassett Co. v. Revlon, Inc.,* 435 F.2d 656, 665 n.5 (2d Cir. 1970); *United States v. Greyhound Corp., supra,* at 886.

### C.

Paragraph E, subsection 1, of the 1972 judgment prohibits the City and its employees and agents from "affecting any term or aspect of governmental employment . . . upon or because of any political reason or factor." Respondents argue that the evidence does not support the district court's conclusion that their conduct violated paragraph E. They point out that none of the employees involved were terminated or otherwise "affected" by the actions of Cardilli.

■ Of course, violations of injunctive orders must be proven by "clear and convincing" evidence. *United States v. Greyhound Corp.*, 363 F.Supp. 525, 570, *supplemented*, 370 F.Supp. 881 (N.D.Ill.1974), *aff'd*, 508 F.2d 529 (7th Cir. 1974). However, we disagree that plaintiffs were required to show that the workers involved were in fact "terminated" or even that their terms of employment were "affected" in some concrete way. The district court found that the "purpose" of calling the workers to City Hall and urging them to circulate petitions of candidacy of Mayor Daley was to "determine whether they would support Mayor Daley's candidacy and/or to coerce and intimidate them by making clear that their departmental superiors, who controlled their jobs, expected them to support Mayor Daley's candidacy." We believe this finding, amply supported by *stipulated* evidence which was "clear and convincing," clearly amounted to "affecting" the term of employment of the five workers involved. The method by which Cardilli summoned and met with each worker, as well as the atmosphere in which the meetings took place, was inherently coercive and reasonably placed the workers in fear of termination. One employee testified that he feared losing his job if he did not take the petition. These facts alone amply support a finding that Cardilli "affected" the terms of employment of the workers.

### D.

Respondents point out that no more than two hours of each employee's working time was involved in the meeting with Cardilli. Therefore, respondents contend that even if Cardilli's actions violated the court's 1972 judgment, the violation was *de minimis* and can only support an award of nominal damages.

■ The seriousness of the violations was a matter for the trier of fact to determine and we cannot agree that Cardilli's clear violations of the district court's even clearer order were trivial. Moreover, respondents' contention that only an award of nominal damages was supported by the violations is misplaced since the court refused to award *any* damages. Respondents apparently consider the court's award of *costs and reasonable attorneys' fees* against them as an award of *damages.* This is, of course, erroneous. An award of costs and attorney fees in civil contempt is clearly proper and wholly independent of an award of compensatory damages.[10] *W. E. Bassett Company v. Revlon, Inc.*, 435 F.2d 656, 665 n.5 (2d Cir. 1970); *United States v. Greyhound Corp.*, 370 F.Supp. 881, 886 (N.D.Ill.1974).

### E.

Rule 65(d) of the Federal Rules of Civil Procedure provides that an injunction:

is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

Respondents argue that plaintiffs failed to prove Cardilli possessed actual notice of the 1972 judgment and therefore his contempt determination must be reversed.

---

**10.** Respondents argue that the "damages" awarded were out of proportion to the actual amount of attorney fees and costs incurred in the contempt proceeding because the district court also allowed attorney fees and costs pertaining to plaintiffs' motion for an order for further notice of the judgment. We find nothing erroneous in the district court awarding fees and costs to plaintiffs with respect to both proceedings and respondents advance no argument before us that such action on the part of the district court was an abuse of discretion.

While certainly some type of notice of an injunction is required by contemporary notions of due process, cf. *Mullane v. Central Hanover Bank & Trust Company,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), we are not convinced that rule 65(d) requires Cardilli to have possessed *actual* notice of the 1972 judgment. Our reading of that rule discloses that it requires only "persons in active concert or participation with" parties, their officers, agents, servants, employees, and attorneys to have possessed *actual* notice of an injunction before they can be bound by it. Since Cardilli was admittedly an employee of the City (a defendant in the original action) no evidence of *actual* notice was necessary in order for him to be found in civil contempt. However, we need not determine what type of notice is required on the part of "parties, their officers, agents, servants, employees, and attorneys" since we believe that the record supports the conclusion that Cardilli nevertheless did possess actual notice of the 1972 judgment.

The terms of the 1972 judgment required the City to distribute notices of the judgment to all of its employees. That mandate was complied with during the summer of 1972. Cardilli aptly points out that the record does not indicate that he was an employee at the time the notices were distributed. However, in response to the plaintiffs' motion for additional notice filed in January of 1975, the City represented that it had posted notices of the judgment on all departmental bulletin boards and such notices were left posted.[11] In the absence of any statement by Cardilli either before or during the trial to the contrary, it defies our imagination to believe that a high-ranking City official such as Cardilli was unaware of the 1972 judgment.

Moreover, plaintiffs alleged in their petition that Cardilli possessed actual notice of the judgment. Respondents' failure to deny this allegation in their answer must be deemed an admission under Fed.R.Civ.P. 8(d), *McComb v. Blue Star Auto Stores,* 164 F.2d 329 (7th Cir. 1947), *cert. denied,* 332 U.S. 855, 68 S.Ct. 387, 92 L.Ed. 424 (1948), since pleadings in a civil contempt proceeding must comply with rule 8, *Philippe v. Window Glass Cutters League,* 99 F.Supp. 369, 374–75 (W.D.Ark.1951), *quoting* 3 Barron & Holtzoff, Federal Practice & Procedure § 1439, at 320; see also 3 Wright, Federal Practice & Procedure § 705, at 161.

Since respondents failed to deny Cardilli's notice or otherwise raise the issue of lack of notice at any time before appeal, the district court did not err in finding Cardilli in contempt.

### F.

It is elementary that a principal is only liable for those acts performed within the scope of an agent's employment.[12] Based upon this proposition, the City argues, as a final matter, that it cannot be held in contempt because Cardilli's conduct was clearly outside the scope of his employment. We disagree.

Cardilli's action in summoning the five employees to his office and there interviewing each separately was plainly within the scope of his duties. The City contends that there was no evidence before the court bearing on exactly what Cardilli's duties involved. To the contrary, however, Cardilli testified that on the days in question he held the position of Director of Administration of the Department of Streets and Sanitation. It is obvious that such a position involves supervisory functions over employees in the department and that summoning employees to City Hall and interviewing them there are both well within the scope of employment of the person

---

11. Since civil contempt proceedings are a part of the original cause, *Gompers v. Bucks Stove & Range Company, supra,* 221 U.S. at 446, 31 S.Ct. at 500, 55 L.Ed. at 807, it was proper for the district court to have considered the City's representation made during the proceeding for further notice.

12. See generally Prosser, Law of Torts 461 (4th ed. 1971); Comment, *Corporate Criminal Liability,* 68 Nw.U.L.Rev. 870, 874–75 (1973).

holding that position. The City's argument that in order to hold it in contempt, plaintiffs were required to show that the City authorized Cardilli to order employees to undertake political work is patently frivolous. Hence, the district court did not err in holding the City in contempt along with Cardilli.[13]

The judgment of the district court holding defendant-respondent City of Chicago and respondent Michael Cardilli in civil contempt of court is accordingly affirmed.

AFFIRMED.

---

13. The City maintains that it cannot be held in contempt for Cardilli's violation of the 1972 judgment where Cardilli's actions were also in direct contravention of the City's order to all its employees to obey the injunctive provisions. We agree with the court's statement in *Singer Mfg. Co. v. Sun Vacuum Stores, Inc.,* 192 F.Supp. 738 (D.N.J.1961):

The orders of the Court must be obeyed, and to absolve a large or small corporate defendant from its responsibilities simply because the corporation has ordered compliance but has not sufficiently policed same, would be to open the door for wholesale disobedience of the Court. [*Id.* at 741.]

See also *Coca Cola Company v. Bisignano,* 343 F.Supp. 263, 264 (S.D.Iowa 1972); *United States v. Armour & Company,* 168 F.2d 342, 343–44 (3d Cir. 1948).