**U. S. POSTAL SERVICE, Plaintiff,**

**v.**

**COLUMBIA RESEARCH CORPORATION, Defendant.**

**No. 79C 2065.**

United States District Court, N. D. Illinois, E. D.

June 18, 1980.

Daniel Murray, Asst. U. S. Atty., Chicago, Ill., for plaintiff.

Larry Rubin, Chicago, Ill., for defendant.

MEMORANDUM OPINION

MAROVITZ, District Judge.

*Motion For A Rule To Show Cause And Petition For Approval Of Costs And Attorneys' Fees*

*Introduction*

The United States Postal Service (the "Postal Service") originally commenced this

---

action against Columbia Research Corporation (CRC) on May 21, 1979 pursuant to 39 U.S.C. §§ 3005, 3007. The Postal Service alleged, *inter alia*, that CRC, an Illinois corporation engaged in the sale of vacation packages, had made false representations in connection with its solicitations through the mail of the sale of Las Vegas vacation packages. On June 19, 1979, this Court entered a judgment consented to by the parties whereby CRC, by its President Raymond Anderson, agreed to reimburse members of the public who had responded to the solicitations and amend its future solicitations. On August 31, 1979, the Postal Service initiated contempt proceedings against respondents CRC, Anderson, Inez Zeff, formerly an officer and employee of CRC, and others, alleging that respondents had made solicitations in violation of the consent judgment under the name of Computer Selections, Inc. (CSI). After a hearing, the Court found that CSI was an alter ego of CRC and that respondents CRC, Anderson, and Zeff (hereinafter referred to collectively as "respondents"), acting through CSI, had willfully violated the terms of the consent judgment. Pursuant to this Court's civil contempt powers, it ordered respondents to post a $50,000.00 bond for a two year period to ensure future compliance with the consent judgment. The Court also awarded the Postal Service its reasonable costs and attorneys' fees. Pending before the Court are the Postal Service's proposed order with respect to its costs and attorneys' fees and the Postal Service's motion for a rule to show cause why respondents should not be held in contempt for their failure to post the aforementioned $50,000.00 bond.

### Motion For Rule To Show Cause

The Court turns first to the Postal Service's motion for a rule to show cause. In response to the Postal Service's motion, counsel for respondents states that respondent Anderson can not be located, that CRC is defunct and without sufficient assets to post the bond, and that Zeff is also financially unable to post the bond. Thus, respondents' counsel contends, since respon-

dents are incapable of posting the bond, it would be improper for the Court to invoke its civil contempt powers against respondents in an attempt to compel respondents to post the bond.

Because it is undisputed that respondents have not posted a bond as ordered by this Court, the rule requested by the Postal Service shall issue ordering respondents to show cause why they should not be held in contempt and appropriate relief entered against them. Respondents correctly assert, indeed it is axiomatic, that this Court's contempt powers may not be invoked to coerce one to do a thing which he cannot do. *Maggio v. Zeitz*, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948); *Natural Resources Defense Council, Inc. v. Train*, 510 F.2d 692 (D.C. Cir. 1974). However, such a defense of impossibility should be sustained only after the Court has had an opportunity to carefully scrutinize all of the relevant evidence. *See id.* The present record does not afford the Court such an opportunity.

■ Accordingly, respondents are hereby ordered to show cause why they should not be found in contempt of Court for their failure to post a $50,000.00 bond as ordered by this Court. Respondents are advised that they shall bear the burden of establishing the impropriety of the issuance of a contempt order. *See, e. g.*, 56 Am.Jur.2d *Motions, Rules, and Orders* § 34. If respondents believe that a hearing is necessary for them to adequately present their position they should present a properly supported request for a hearing within 5 days of the instant memorandum opinion. Otherwise, respondents shall file, within 15 days of the instant memorandum opinion, a brief setting forth in detail why a contempt order should not issue. The Postal Service shall respond to respondents' brief within 10 days after the filing of respondents' brief.

### Petition For Costs And Attorneys' Fees

The Court, in its memorandum opinion of January 24, 1980, awarded the Postal Service its reasonable costs and attorneys' fees

as incurred in connection with the aforementioned contempt proceedings. The Postal Service has submitted a petition for approval of costs in a total amount of $7,728.98 and attorneys' fees in a total amount of $34,317.42. Respondents have not voiced any objection to the amount of costs which the Postal Service proposes that it be awarded. Respondents have, however, lodged several objections to the award of attorneys' fees proposed by the Postal Service.

■ Respondents first contend that the award of attorneys' fees should not include work performed in this case by Department of Justice attorneys since the Court's memorandum opinion refers only to the attorneys' fees of the Postal Service. This argument is specious. The Department of Justice performed legal work in this matter on behalf of the Postal Service and, accordingly, such work is fully within the terms of this Court's award of attorneys' fees to the Postal Service.

Respondents also argue that an award of attorneys' fees to the Postal Service should be based upon the salaries of the government attorneys involved in this action, rather than upon the prevailing hourly rates for private attorneys. The rationale underlying this argument is that an award of attorneys' fees in the context of a civil contempt proceeding is made only pursuant to the compensatory purpose of the Court's civil contempt powers, *e. g., Shakman v. Democratic Organization of Cook County*, 533 F.2d 344, 351 (7th Cir. 1976), and, therefore, the award should be limited to the amount which the prevailing party will be reasonably required to pay his attorneys.

The Court finds this argument of respondents to be meritorious. Because it is the compensatory facet of the Court's contempt power that authorizes it to order a contemnor to pay the successful party's attorneys' fees, it follows therefrom that the award should be limited to that amount which the successful party would himself otherwise be required to pay his attorneys. Indeed, it would likely be an abuse of the Court's discretion to do otherwise.

Although courts have often granted the government an award of its attorneys' fees when it was the prevailing party in a civil contempt proceeding, *e.g., Northside Realty Associates, Inc. v. United States*, 605 F.2d 1348, 1356 (5th Cir. 1979); *Dallas General Drivers, Warehousemen and Helpers, Local Union No. 745 v. NLRB*, 500 F.2d 768, 771 (D.C. Cir. 1974), the Court has found but one reported decision which speaks to the rate of compensation which the government should receive for the work of its attorneys. *United States v. Greyhound Corp.*, 370 F.Supp. 881, 886 (N.D.Ill.1974), *aff'd*, 508 F.2d 529 (7th Cir.). In *Greyhound*, the court directed the government's attorneys to submit affidavits detailing the number of hours they expended in connection with the contempt proceeding and to set forth therein their respective grade levels. Presumably, the Court's order contemplated ultimately fixing the award of attorneys' fees by multiplying the reasonable number of hours spent by each government attorney by his or her respective grade level.

■ In any event, the Court finds that such is the appropriate method to compute the award of attorneys' fees to be made herein. The attorneys who represented the Postal Service presumably receive a salary fixed according to their respective grade levels. Thus, to award the Postal Service its attorneys' fees according to the prevailing rates charged by the private bar would cause the government to receive a windfall. This the Court may not do by way of the exercise of its civil contempt powers. Accordingly, each government attorney involved in this contempt proceeding shall submit to the Court an affidavit disclosing their grade level during the relevant time periods.

■ Respondents also contend that the number of hours which the government's attorneys claim they expended on this case is unreasonably excessive. The government's attorneys have, by way of affidavit, set forth the hours they spent in the preparation of the instant contempt proceeding. After carefully examining these affidavits

in view, to the extent relevant, of the criteria contained in Disciplinary Rule 2–106 of the ABA Code of Professional Responsibility, *Waters v. Wisconsin Steel Works of International Harvester Co.*, 502 F.2d 1309, 1322 (7th Cir. 1974), *cert. denied*, 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976), the Court concludes that the number of hours spent by the government's attorneys is reasonable. In this connection, the Court finds it very significant that the presentation of the government's case required a substantial investigative effort in order to establish the identity of interest between the respondents and CSI necessary to hold respondents liable for the latter's conduct.

Finally, respondents object to the government attorneys' inclusion in their petition of the time spent preparing the instant petition for costs and attorneys' fees. The Court finds respondents' objection to be unfounded in that an award which excluded those hours would not fully compensate the government for those expenses which it would not have incurred but for the respondents' contemptuous conduct. Indeed, to sustain respondents' objection would result in a dilution of the Court's award of costs and attorneys' fees.