Michael L. SHAKMAN et al., Plaintiffs,

v.

The DEMOCRATIC ORGANIZATION OF COOK COUNTY et al., Defendants.

PETITION of Edward J. EGAN.

No. 69 C 2145.

United States District Court,
N. D. Illinois, E. D.

March 5, 1981.

John C. Tucker and Christopher L. Varner, Jenner & Block, Chicago, Ill., for plaintiffs.

Raymond J. Smith and Ellen G. Robinson, Arnette Hubbard and Jeffrey Steinback, Samuel K. Skinner, Charles W. Douglas, Michael C. Cook and Maureen Walsh, Sidley & Austin, Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

This cause comes before the court on the motions of *Shakman* respondents Jane M. Byrne and Eugene M. Barnes for vacation of the Order of this court dated January 23,

1981 pertaining to respondent Barnes,[1] and to dismiss the *Shakman* Rule to Show Cause petition of Chicago Transit Authority [CTA] General Counsel Edward Egan. For the reasons hereinafter stated, these motions will be denied.

### January 23, 1981 Order

In seeking to have vacated the Order of this court dated January 23, 1981, restraining respondent Eugene Barnes from interfering with the CTA employment position or status of Edward Egan pending disposition of his [Egan's] *Shakman* Rule to Show Cause petition, the respondents first contend that said Order constituted a temporary restraining Order [TRO] under Rule 65(b) of the Federal Rules of Civil Procedure, then argue that, as more than twenty days have passed since the entry of it, the Order is no longer viable unless treated as a preliminary injunction—an action the court concededly has not taken.

This motion of the respondents will be denied because the court does not agree that its Order of January 23, 1981 can reasonably be characterized as a TRO. As to this point, it first must be noted that the January 23 Order was not entered pursuant to Rule 65(b) of the Federal Rules, nor was it issued without notice to the respondents.[2] Of greater significance, though, is the court's belief that the Order in question restraining the actions of respondent Barnes should more properly be viewed as an agreed Order, wherein respondent Barnes agreed not to take any actions with respect to petitioner Egan's employment status during the pendency of his [Egan's] *Shakman* suit in exchange for not having to litigate the merits of Egan's need for such preliminary protection. That such is in actuality what the January 23 Order amounted to can reasonably be inferred both from the fact that the subject Order was entered against respondent Barnes at a time when said respondent was represented by counsel, and that Barnes' counsel made no objections either as to entry of the Order or regarding the provisions, including the durational provision, contained therein.[3]

Further supporting this conclusion is the fact that, because respondent Barnes, through his counsel, accepted the January 23 Order without objection, no inquiry ever was conducted by the court into the merits of petitioner Egan's claimed need for pretrial protection. Had objection at any time been made to the January 23 Order on that basis, a hearing on such matters would have been held, and petitioner Egan would have had the opportunity to argue the merits of his claim. No hearing was scheduled, though, because none was thought to be required based upon respondent Barnes' amicable acceptance of the January 23, 1981 Order, for the durational period stated therein.[4]

---

1. In her motion for vacation and dismissal, respondent Jane Byrne seeks to have vacated a Minute Order dated January 23, 1981, which provided that, because Ms. Byrne, through her counsel, agreed not to take any actions with respect to petitioner Edward Egan's employment status as General Counsel to the CTA, no restraining order would be entered against her. Because the court does not believe that Ms. Byrne, by her present motion, actually seeks to have this Minute Order vacated, and thereby risk having a restraining order entered against her, and as such an argument also would be inconsistent with Ms. Byrne's present position that she has no authority to affect petitioner Egan's employment status, no consideration will be given to this aspect of respondent Byrne's motion.

2. Indeed, counsel for both respondents were before the court, and ably presented their respective clients' positions, at the time the January 23, 1981 Order was entered.

3. Another indication of the fact that respondent Barnes consented to be bound by the restraints of the January 23 Order until petitioner Egan's *Shakman* action was resolved is that Barnes, through his counsel, successfully moved on January 23 to have discovery in the Egan matter stayed pending the filing and resolution of the motions to dismiss at bar. Such an action on Barnes' part clearly is inconsistent with his present argument, that he believed the January 23 Order to be a TRO.

4. If the January 23, 1981 Order is considered an agreed Order, respondent Barnes' argument that said Order must be vacated because it impermissibly encumbers his ability, as the client, to control his relationship with his attorney [Egan] must fail. This is so because re-

## Motions to Dismiss

In their motions for dismissal of the *Shakman* Rule to Show Cause petition of Edward Egan, the respondents first contend that, under the pleading requirements of Civil Rule 18 of the Local Rules for the Federal District Court for the Northern District of Illinois, the verified allegations contained in the Egan petition cannot be considered sufficient to show that the conduct of respondents Byrne and Barnes was so violative of the May 5, 1972 *Shakman* Consent Judgment as to be deemed contumacious. Such being true, they then argue, the Egan petition must be dismissed.

■ If read alone and in a light most favorable to the petitioner, however, the court believes that the factual allegations made in the *Shakman* petition of Edward Egan, as such was amended on February 17, 1981, when coupled with the affidavits attached thereto, are more than adequate to establish that violations of the 1972 Consent Judgment, sufficient to constitute contempt of court, may have been committed by the respondents.[5] As that is so, under the Federal Rules of Civil Procedure the Egan petition cannot properly be dismissed for reasons of factual insufficiency. Rules 8(a), (e) & (f), Fed.R.Civ.P.; *Philippe v. Window Glass Cutters League of America*, 99 F.Supp. 369, 374–75 (W.D.Ark.1951). In this regard, while Local Civil Rule 18 also is procedural in nature, it cannot reasonably be construed as, in effect, imposing a substantially higher or stricter standard of pleading upon Mr. Egan than would otherwise be required of him under the Federal Rules. *See Shakman v. Democratic Organization of Cook County*, 533 F.2d 344, 352 (7th Cir. 1976); *Philippe v. Window Glass Cutters League of America, supra* at 374–75.

■ The respondents, in seeking to have the Egan petition dismissed, next take the position that Edward Egan is not entitled to relief because he is not a governmental employee protected under the 1972 *Shakman* Consent Judgment.

The class of those governmental employees protected under *Shakman* is delineated in ¶ B of the 1972 Consent Judgment, which provides:

> B. As used herein, (1) the term "governmental employment" means any employment (whether full-time or part-time, permanent or temporary, and regardless of whether the employment is paid for by federal funds) by or for the City of Chicago or any employment within the Northern District of Illinois by or for any other governmental entity other than an entity of the federal government; (2) the terms "governmental employee" and "employee" mean a person employed in governmental employment.

Under ¶ B, it thus would appear that, as one employed within the Northern District of Illinois by what admittedly is a non-federal governmental entity, petitioner Egan is an employee protected by the 1972 Judgment. The respondents, however, contend that the class of governmental employees described in ¶ B of the 1972 Consent Judgment can reasonably and properly be limited solely to those individuals who are employed in the Northern District of Illinois by governmental entities which were par-

---

spondent Barnes, having consented to the provisions of the January 23 Order, must be deemed to have agreed to this encumbrance on his rights as a client.

**5.** As regards the May 5, 1972 *Shakman* Consent Judgment, it is well settled that actions in contravention of the provisions of that Decree, if they have even an insubstantial affect on the employment of one protected thereunder, can under appropriate circumstances be considered contemptuous. *Shakman v. Democratic Organization of Cook County*, 533 F.2d 344 (7th Cir. 1976). The 1972 Judgment, in short, in addition to affording them protection from actual injury, protects employees from even being threatened in their employment because of their political beliefs or affiliations. As that is true, this court is of the opinion that even an *attempt* by one bound by the provisions of the 1972 Judgment to affect the employment status of a protected employee for political reasons can constitute contumacious conduct sufficient to warrant the imposition of relief. *Shakman v. Democratic Organization of Cook County* (Petitions of John Huels and Frank Brennan), 481 F.Supp. 1315 at 1322 (N.D.Ill.1981).

ties to the 1972 Judgment. Giving such a construction to ¶ B, they then argue that, because the CTA is not and never has been a signatory to the 1972 Consent Judgment, Edward Egan is not an employee protected under *Shakman.*

The construction of the *Shakman* governmental employee definition urged by the respondents is not unreasonable. Their construction, however, does contradict and severely limit what is otherwise clear and unambiguous language in the 1972 Consent Judgment. Because that is true, as the respondents have not presented any evidentiary materials to support their interpretation of ¶ B, but rather have relied solely upon mere conjecture as to that point, the court feels compelled to define governmental employee in accordance with the clear language of ¶ B, and accordingly to find that petitioner Egan, as the General Counsel to the CTA, is a governmental employee protected under *Shakman.*

█ The respondents' third argument in support of their motions to dismiss is essentially that, because the position occupied by the petitioner—General Counsel of the CTA—is one which involves policy-making to a considerable degree, and also is highly confidential in nature, judicial review of their [the respondents'] conduct with respect to Mr. Egan is proscribed by ¶ H(1)(a) of the 1972 Consent Judgment.[6]

As regards this contention of the movants, the court agrees with respondents Byrne and Barnes that certain governmental employment positions exist which should be exempt from judicial scrutiny under the 1972 *Shakman* Consent Judgment, and also that the determination of whether a particular employment position should be so exempted will in many instances be a question of law, to be resolved prior to any hearing on the merits of the subject employee's claims.[7] The court, however, strongly disagrees with the respondents' apparent contention that any employee who occupies a highly confidential position, or one involving a significant amount of policy-making, will necessarily be exempted from the protections of *Shakman.* Rather, the court believes that the respondents' arguments in this respect have in large part been foreclosed by the decision of the United States Supreme Court in *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). *But see Shakman v. Democratic Organization of Cook County,* (Petition of Alan Howarter), 481 F.Supp. 1315 at 1321 (N.D.Ill. 1981).

In *Branti,* the United States Supreme Court held:

> It is equally clear that party affiliation is not necessarily relevant to every policy-making or confidential position. The coach of a state university's football team formulates policy, but no one could seriously claim that Republicans make better coaches than Democrats, or vice versa, no matter which party is in control of the state government. On the other hand, it is equally clear that the Governor of a State may appropriately believe that the official duties of various assistants who help him write speeches, explain his views to the press, or communicate with the legislature cannot be performed effectively unless those persons share his political beliefs and party commitments. In sum, the ultimate inquiry is not whether the label "policymaker" or "confidential"

---

**6.** ¶ H(1)(a) of the 1972 *Shakman* Consent Judgment provides:

> H. Jurisdiction is retained for the following purposes:
> (1) To enable the parties to this Judgment to continue to litigate the following questions before this Court:
> (a) Certain governmental employment positions under the jurisdiction of the defendants who are parties to this Judgment by their nature involve policy-making to such a degree or are so confidential in nature as to require that discharge from such positions be

exempt from inquiry under this Judgment. Jurisdiction is maintained to litigate the question of which governmental employment positions under such defendants' jurisdiction are so exempt for the foregoing reasons.

**7.** The court, however, believes that the burden of establishing the propriety of any exemption so claimed rests entirely with the defendant-respondent. *See Branti v. Finkel,* 445 U.S. 507, 518, 100 S.Ct. 1287, 1294, 63 L.Ed.2d 574 (1980).

fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.

445 U.S. at 518, 100 S.Ct. at 1294. From *Branti*, therefore, it appears that resolution of the question of whether the governmental employment position occupied by petitioner Egan, or any other *Shakman* petitioner, should be exempted from scrutiny under the 1972 *Shakman* Consent Judgment will hinge not only upon whether the position is highly confidential and/or involves a substantial degree of policymaking, but also upon whether the respondents will be able to demonstrate that "party affiliation is an appropriate requirement for the effective performance of [that position]." The burden of establishing this latter fact, in addition, after *Branti* seems to rest entirely with the respondents.[8]

Respondent Byrne also argues in connection with her motion to dismiss that, under the dictates of *International Longshoremen's Association, Local 1291 v. Philadelphia Marine Trade Association*, 389 U.S. 64, 76, 88 S.Ct. 201, 208, 19 L.Ed.2d 236 (1967), the 1972 *Shakman* Consent Judgment must be considered too vague to allow for a finding that her actions with respect to petitioner Egan constituted contumacious conduct. Specifically, Ms. Byrne contends that, because the threshold question of whether the employment position occupied by Mr. Egan is one exempt from scrutiny under ¶ H(1)(a) of the 1972 Consent Judgment has not as yet been litigated, and as that position clearly is one which could fall within the exemptions provided for in that Judgment, she cannot be held to have acted contemptuously toward the petitioner.[9]

This argument of respondent Byrne, the court believes, while reasonable generally, is lacking in merit when applied to the 1972 Consent Judgment. The 1972 *Shakman* Judgment, in contrast to what might be considered an ordinary Judgment Order of a court, was a Consent Decree, entered into by, among others, the Mayor of the City of Chicago. Concerning the question of which employment positions should be exempt from scrutiny under the Decree, provision was made by the *Shakman* parties, in the Judgment itself, ¶ H(1)(a), for litigation of that issue. In view of that provision, and of the fact that the 1972 Decree was an agreed Order, the court is of the opinion that, if a party to the 1972 Judgment desires to act with respect to any governmental employee in the Northern District of Illinois for political reasons, and is unsure as to whether that employee occupies a position exempt from judicial scrutiny under *Shakman*, the proper course for that party to follow would be to, pursuant to ¶ H(1)(a) of the Decree, seek a judicial declaration as to the status of the subject employee.[10] Because that is true, the court further believes that, if a party bound by the 1972 Judgment wishes to affect, for political reasons, the employment status of a governmental employee in the Northern District of Illinois without first seeking such declaratory relief, if that person's employment position is found to be one not exempt from scrutiny under *Shakman*, the respondent party can properly be held to have acted wrongfully.

■ Lastly, respondent Barnes contends that the Egan petition must be dismissed as to him because, as the client, he should have

---

**8.** The respondents have presented no evidence on the question of whether political affiliation is necessary to the effective performance of the position of General Counsel of the CTA. From certain language in Chapter 111⅔, § 328 of the Illinois Revised Statutes, however, it appears that political considerations may *not* be relevant to the performance of that position.

**9.** As to respondent Byrne's general contention that the 1972 *Shakman* Consent Judgment does not, by its terms, prohibit attempts by persons

bound by it to impermissibly prejudice or affect the employment status of ones protected by the Decree, *see* footnote 5, *supra*.

**10.** From the 1972 Decree, the court believes it clear that it is the parties thereto, not the individual employee, who must seek declaratory relief before taking action. In this regard, it must be remembered that the governmental employees protected under the 1972 *Shakman* Consent Judgment are not and never have been parties to the actual *Shakman* litigation.

an unfettered right to discharge Edward Egan as his attorney. Essentially, Barnes argues in this regard that, if petitioner Egan is allowed to proceed further, his [Barnes'] rights as a client will be impermissibly and unnecessarily encumbered.

As regards this contention of respondent Barnes, the court notes first that a fact question presently exists as to whether Barnes, or the CTA Board, is in actuality petitioner Egan's client. Resolution of that question, however, is not necessary before respondent Barnes' motion to dismiss on this ground can properly be denied. This is so because Barnes, as a public employer, does not have an unfettered right to discharge attorneys in his employ, even when, technically speaking, he is their client. The respondent, for example, cannot dismiss an attorney working for the CTA solely, because of that person's race or religious affiliation. Also, under Chapter 111⅔, § 328 of the Illinois Revised Statutes, it appears that respondent Barnes may not be able to discharge such employees for reasons of political affiliation.[11] *See also Branti v. Finkel*, 445 U.S. 507, 518, 100 S.Ct. 1287, 1294, 63 L.Ed.2d 574 (1980). That being the law, the court does not believe that Edward Egan's *Shakman* Rule to Show Cause petition can properly be dismissed on the basis that to allow the matter to go forward would unreasonably and unnecessarily encumber the attorney-client relationship of Egan and respondent Barnes.[12]

### CONCLUSION

For the reasons set forth above, the motions of respondents Jane M. Byrne and Eugene M. Barnes for vacation of the Order of this court dated January 23, 1981, and to dismiss the *Shakman* Rule to Show Cause petition of CTA General Counsel Edward Egan, are DENIED.

IT IS SO ORDERED.

---

11. Chapter 111⅔, § 328 of the Illinois Revised Statutes provides in pertinent part:

> § 328 Classification of positions and employments—Discharge or demotion of officers or employees—Hearings
>
> The Board shall classify all the offices, positions and grades of regular employment required, excepting that of the Chairman of the Board, the Executive Director, Secretary, Treasurer, General Attorney, and Chief Engineer, with reference to the duties thereof and the compensation fixed therefor, and adopt rules governing appointments to any of such offices or positions on the basis of merit and efficiency. No discrimination shall be made in any appointment or promotion because of race, creed, color, sex, national origin, physical or mental handicap unrelated to ability, or political or religious affiliations. No officer or employee shall be discharged or demoted except for cause which is detrimental to the service.

12. The court does not disagree with respondent Barnes' contention that he, or the CTA Board, as the client, should have the right, even under *Shakmán*, to discharge an attorney occupying the position of petitioner Egan if that attorney becomes a person in whom he [Barnes] or the Board can no longer repose full trust and confidence. If, at trial, respondent Barnes can establish that he took the actions complained of with respect to Mr. Egan solely for those reasons, this in all likelihood will constitute a complete defense to the merits of the Egan petition. However, because it has been alleged in the petition at bar that respondent Barnes sought to affect Edward Egan's employment status for political reasons, and that his actions in that regard were taken at the behest of respondent Byrne, who is not petitioner Egan's client, that Barnes, as Egan's client, could have validly discharged him [Egan] for non-political attorney-client considerations can only operate as defense to the petition, and cannot be a basis for the dismissal of it.