**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and Howard McDougall, Trustee, and Central States, Southeast and Southwest Areas Health and Welfare Fund, and Howard McDougall, Trustee, Plaintiffs,**

v.

**EXPRESS FREIGHT LINES, INC., a Wisconsin Corporation, Defendant.**

**No. 89 C 0528.**

United States District Court, N.D. Illinois, E.D.

July 25, 1989.

## MEMORANDUM ORDER

ZAGEL, District Judge.

On May 12, 1989 this Court entered an order requiring Express Freight Lines, Inc., "its agents, servants, employees, attorneys and all persons in active counsel and participation with it pending final hearing ... of this action ... to pay the contributions owed for the month of April 1989 by 4:30 p.m. on May 15, 1989 and ... to pay on the Friday of each calendar week (beginning on May 12, 1989) an amount equal to contributions owed to the Pension and Welfare Funds for such week, said weekly payments to continue as long as this case is pending." This Injunction ordered is attached as an Appendix.

The order was not obeyed. Express Freight Lines was found to be in contempt.[1] It is now in bankruptcy. At issue here is whether Christopher Jansen is similarly in contempt for failing to obey the order to pay.

Christopher Jansen received a copy of the Court's order on May 15, 1989. He knew it required Express Freight to pay money. He also had the authority to order payment. Mr. Jansen made, in fact, many of the decisions as to what would or would not be paid by Express Freight. He and his family owned fifty percent of Federated Freightways which, in turn, had recently purchased Express Freight. Mr. Jansen reviewed, on a daily basis, the Express Freight's accounts payable and the checks issued to pay them. Mr. Jansen's assertions (to the extent they were made at the hearing) that he did not decide (or have the power to decide) to pay plaintiffs are inconsistent with his testimony at a prior hearing and are not credible. What Mr. Jansen did was to refer the matter to his lawyer. The lawyer did nothing because he had not been paid (and may have been physically unavailable). Further, Mr. Jansen sought additional discussions with the plaintiffs. In his words: "I decided not to pay Central States due to our negotiation with Mr. Madden [plaintiffs' representative] and be-

Albert Madden, James D. O'Connell, Central States Law Dept., Chicago, Ill., for plaintiffs.

Bennett Epstein, Michael Trucco, John F. Kennedy, Coffield, Ungaretti, Harris & Slavin, Chicago, Ill., for Peter G. Swan—Christopher Jansen of Express Freight.

Emalfarb, Swan & Bain, Highland Park, Ill., for defendant.

1. Thomas Kritner, an employee of the defendant on whom the order was served on May 12, was also found in contempt; plaintiffs do not press for sanctions against him.

ing able to come to a satisfactory conclusion." Mr. Jansen neither obeyed the order (he paid nothing) nor sought its modification until May 30, 1989. Express Freight took in over $240,000.00 per week during the period of May 12–30. It paid out many thousands of dollars during that period, including several thousand dollars to Federated Freightways as management fees (presumably for Mr. Jansen's services, among others).

These facts really leave no doubt that Mr. Jansen willfully—knowingly—violated this Court's order. He offers some arguments against a contempt finding and a plea in mitigation.

■ The first is that this Court was without subject matter jurisdiction. If this is so, then the order need not have been obeyed. It is not so. Subject matter jurisdiction is conferred by statute, 29 U.S.C. sec. 1132(e)(1). The particular remedy sought by plaintiffs here is rooted in the policy of Congress to enforce prompt payment of obligations to pension funds. There is no dispute here that money was owed by Express Freight to the plaintiffs. The claim that plaintiffs had an adequate remedy at law, if apparently true at the time of hearing[2], proves only that the order was entered erroneously, not that it was entered without jurisdiction.

■ The second argument is that the order was not in compliance with the requirements of Rule 65 because it lacked reasons and specificity. The findings of fact and conclusions of law are adequate. The order did not, however, require the payment of any specific amount. It could not do so because the amount owed depended upon the number of covered employees who worked during the relevant period— these calculations are made, in the first instance by Express Freight. Prior history had shown that a weekly payment of $10,-500.00 should be made (subject to end-of-the-month adjustments). In any event,

there seems little reason to follow this argument. Mr. Jansen knew he owed some sum of money, he paid nothing, not even what he believed was owed.

■ The third claim is that compliance with the order was impossible. It may have been costly, but it was not impossible. Even if complying with an order is a hardship, it must be obeyed nonetheless. But an order that cannot be obeyed, need not be obeyed. (Ought implies can.) "Cannot" here is used in the literal sense of irreparable inability, i.e., impossibility. The impossibility defense fails here because Express Freight paid out over $250,000.00 to many other creditors during the relevant period. Mr. Jansen chose to pay other creditors. He had the ability to choose to pay plaintiffs in compliance with the order (if not on May 15, then on one or more of the subsequent days of the period), but decided otherwise.

■ The final claim is that Mr. Jansen was lured or lulled into non-compliance by plaintiffs. When he received the order Mr. Jansen called plaintiffs' counsel and sought to negotiate a resolution of the Express Freight payment problem. Negotiations did take place. It is fair to say the plaintiffs doubted at the time (and doubt now in light of subsequent events) that the negotiations were in good faith. The negotiators for Express Freight deny this. I need not resolve the question because good faith negotiations with an opposing party do not excuse disobedience to a court order secured by the opposing party. There is no credible claim that plaintiffs told Express Freight personnel not to worry about the order or not to comply with it. Mr. Jansen claims he was drawn in by the plaintiffs' failure to remonstrate with Express Freight regarding obedience to the order. Mr. Jansen argues the failure of plaintiffs to demand compliance or threaten immediate enforcement misled him.[3] What oc-

2. Subsequent events involving the bankruptcy of Express Freight tend to show there was no adequate remedy at law. *See Roland Machinery Co. v. Dresser Industries, Inc.,* 749 F.2d 380, 386 (7th Cir.1984).

3. In fact, plaintiffs were unmistakably vigorous in prosecuting this case—twice asking for immediate sanctions to which Express Freight responded by asking for more time. Jansen's own answer characterizes plaintiffs' action as "ex-

curred here is that Mr. Jansen misled himself. He treated a court order as though it were a demand letter from plaintiffs. His course of conduct was consistent with this: he began negotiations with the plaintiffs, and did not pay even that which he knew he owed. This may be an appropriate response to a demand letter. It is not a proper response to a court order.

One last aspect of this is Mr. Jansen's observation that he took these actions without legal advice and in the face of "a unique court order" (a mandatory injunction). Without counsel, it is doubtful that Mr. Jansen perceived the court order was "unique", and, at all events, "unique" orders are no less binding than "ordinary" orders. Moreover, the fact that he was without counsel was his choice, not plaintiffs'.

In short, even if one accepts Mr. Jansen's explanations for his conduct on May 15, 16 or 17, the continued disobedience to the Court's order is inexcusable.

 This leads to the question of remedy. An "award of costs and attorney fees in civil contempt is clearly proper and wholly independent of an award of compensatory damages." *Shakman v. Democratic Organization of Cook County*, 533 F.2d 344, 351 (7th Cir.1976). Compensatory fines are also permissible (and may be a matter of entitlement). *See Thompson v. Cleland*, 782 F.2d 719, 722 n. 5 (7th Cir. 1986). There is evidence that Mr. Jansen has the resources to pay such fees and compensation.[4] What the plaintiffs' lost was three payments of $10,500 (May 12, 19, 26) or $31,500.00. There were also attorney fees and costs of $12,185.00. Mr. Jansen does not challenge the correctness of these amounts. At most, he argues that his conduct was understandable, if not excusable, in light of the financial crisis he faced at Express Freight. But his conduct is as consistent with a deliberate pattern of delay and avoidance of indisputable obligation as it is with an understandable desire to fend off allegations before worrying

about draining the swamp (even if he was mistaken of what was the swamp and what the alligator). It is my view that to avoid compensatory fines and attorneys fees and costs here, mitigation must be shown and not merely suggested. It is not shown here.

Accordingly, Christopher Jansen is found to be in willful civil contempt of this Court's Order of May 12, 1989 and is ordered to pay a compensatory fine of $31,-500.00 to plaintiffs as well as attorney's fees and costs in the amount of $12,185.00.

SO ORDERED.

---

tremely zealous prosecution of a collection matter." It therefore is difficult to believe he was misled by plaintiffs.

**4.** Wichert Deposition, 58, 63, 65, 41, 46, 48.