SUBURBAN O'HARE COMMISSION; The Village of Addison; The Village of Bensenville; The City of Des Plaines; The Village of Elk Grove Village; The City of Elmhurst; The Village of Franklin Park; The Village of Harwood Heights; The Village of Itasca; The Village of Niles; The Village of Norridge; The City of Park Ridge; The Village of Schiller Park; The City of Wood Dale; and Lawrence C. Bieneman, Plaintiffs,

v.

Elizabeth Hanford DOLE, Secretary of the Department of Transportation; Russell A. Olson, Regional Representative of the Department of Transportation, Region V; Donald Engen, Administrator of the Federal Aviation Administration; Paul Bohr, Director, Great Lakes Region, Federal Aviation Administration; John Guidotti, Supervisor, Illinois Section, Chicago Airports District Office, Federal Aviation Administration; The City of Chicago, a municipal corporation; and Thomas Kapsalis; Commissioner of the Department of Aviation of the City of Chicago, Defendants.

No. 84 C 10387.

United States District Court, N.D. Illinois, E.D.

Feb. 28, 1985.

Joseph Karaganis, A. Bruce White, Karaganis, Gail & White, Chicago, Ill., for plaintiffs.

Michael Conway, Jeremiah Marsh, Hopkins & Sutter, Chicago, Ill., for the City.

Robert T. Grueneberg, Gail Ginsberg, U.S. Asst. Attys., Chicago, Ill., for F.A.A.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

Plaintiffs consist of numerous suburban municipal entities surrounding O'Hare International Airport ("O'Hare"), the Suburban O'Hare Commission, an organization of Illinois municipal corporations created in 1982 for the purpose of protecting its members and their citizenry from environmental damage caused by O'Hare, and Lawrence C. Bieneman, a private citizen of one of the plaintiff villages.[1] The defendants are various officials and employees connected with the Federal Aviation Administration ("FAA"), the Department of Transportation, and the City of Chicago and Chicago itself as a municipal corporation ("City defendants"). In its complaint, filed in this Court on December 4, 1984, Suburban O'Hare challenges an adjudicatory decision of the FAA rendered on November 14, 1984 by which the FAA approved Chicago's 20-year "Master Plan" for the construction and operation of commercial air carrier facilities for the metropolitan Chicago area to meet long-term aircraft operations demand at air carrier airports. The FAA not only approved the expansion of aircraft operations at O'Hare, but also rejected other

---

1. In this Opinion, the plaintiffs will be referred to collectively as "Suburban O'Hare."

alternatives to handle the 20-year demand which would not increase operations at O'Hare.[2]

Suburban O'Hare's complaint consists of 78 pages, 188 enumerated paragraphs, and 6 exhibits, some of which are lengthy in themselves. Although a detailed explanation of the complaint is not necessary for purposes of this Opinion, some discussion of the history and background of this case, as alleged by plaintiffs in their complaint, is helpful to an understanding of its present procedural posture.

*Background*

The FAA's November 14, 1984 decision was the culmination of a dispute that began many years before and resulted, in part, from the procedural decision-making framework created by a Consent Decree entered by Judge Stanley J. Roszkowski of the United States District Court for the Northern District of Illinois on October 14, 1982 in the case of *State of Illinois ex rel. Scott v. Butterfield*, No. 74 C 2410 (*"Illinois v. Butterfield* litigation"). According to the complaint, for many years the mayors and city councils of the plaintiff communities had asked for reduction in the noise and air pollution emanating from O'Hare. Suburban O'Hare alleges that instead of addressing these problems, the City defendants and the FAA had been following a piecemeal approach to the physical development of O'Hare which led to the ever-increasing expansion of O'Hare's capacity to accommodate flight operations far beyond its original design. Because the FAA awarded financial grants to Chicago for the construction of individual projects without examining the long-term expansion program as a whole, frequently after the projects had already been built, the issue of how best to meet long term aviation growth was ignored.

To stop this piecemeal expansion of O'Hare, the State of Illinois and several of the plaintiffs in this case brought the *Illinois v. Butterfield* litigation, seeking disclosure of the City of Chicago's and the FAA's long-term aviation goals and a comprehensive exploration of alternatives to O'Hare expansion. The plaintiffs sought declaratory and injunctive relief under the National Environmental Policy Act, under the Administrative Procedure Act, and under various other federal statutes, to stop the expansion of O'Hare and the allegedly uncontrolled increase in aircraft operations, and noise and air pollution resulting therefrom. In addition to examining the alternatives to meet the long-term aviation operations demand for the Chicago metropolitan area, the plaintiffs wanted the FAA to select an alternative to meet the demand which did not involve the ever-increasing expansion of O'Hare.

*The Consent Decree*

The Consent Decree entered in the *Illinois v. Butterfield* litigation created a procedural framework for such comprehensive decision-making. According to Suburban O'Hare, in 1982 Chicago had proposed a massive construction program at O'Hare pursuant to an FAA sponsored "Master Plan." That Master Plan program involved the construction of hundreds of individual projects, and Chicago was ready to proceed with a number of these projects, designated as Phase I projects. Illinois and the plaintiff municipal entities in the *Illinois v. Butterfield* litigation were prepared to try to stop construction on Phase I projects by seeking injunctive relief. The Consent Decree thus resulted from an attempt to resolve competing interests: Phase I construction could proceed in return for the promise of the FAA and Chicago that all other construction proposed by the Master Plan, now called "Phase II" construction, would not commence until the FAA made a substantive decision to approve or disapprove the entire Master Plan proposal for

---

**2.** The rejected alternatives set forth in the November 14, 1984 FAA decision are: a) consideration of "alternative modes of travel" (e.g., rail, bus, and automobile); b) "utilization of other airports" (e.g., General Mitchell Field in Milwaukee, Wisconsin); c) the "development of a new airport" in the Chicago area; d) consideration of "alternative levels of aviation demand;" and e) "Do Nothing." (Record of Decision, Complaint, Exhibit 4 at pp. 4–5.)

meeting the 20-year metropolitan aircraft operations demand.

The Consent Decree itself provides in relevant part: that "[a]ll future development at O'Hare will comply with all then applicable requirements of Federal and State of Illinois laws requiring environmental analysis and processing" (Consent Decree, ¶ 1a); that construction of certain projects would not proceed until an Environmental Impact Statement was completed (Consent Decree, ¶ 1d); and that "the entire Master Plan development for O'Hare ... will be presented to the FAA for Airport Layout Plan approval and the related environmental review, as a single, comprehensive submission" (Consent Decree, ¶ 1f).

The Airport Layout Plan ("ALP") is the final product of the Master Plan process and is based on the various facilities developed in the Master Plan to meet the 20 year long-term aircraft operations demand of the Chicago metropolitan area. A Final Environmental Impact Statement ("FEIS") based on the requirements of the National Environmental Policy Act, 42 U.S.C. § 4321, *et seq.* ("NEPA"), accompanied the ALP, which was submitted by Chicago to the FAA in April 9, 1984. On May 31, 1984, the FAA approved the FEIS. The FAA described the issue in its Record of Decision reflecting the approval of the ALP as follows:

> The issue is whether to approve the Airport Layout Plan submitted by the City of Chicago. Approval of it would allow the City to proceed with implementing the proposed development at the airport and to request Federal funds for eligible items of development. Not approving it would prevent the City from proceeding with the development in a timely manner.

(Complaint, Exhibit 4 at p. 2.) On November 14, 1984, the FAA approved the ALP as the final product of Chicago's Master Plan.

In the Record of Decision, the FAA specifically disavowed approval of the ALP for federal funding purposes:

> Approval of the Airport Layout Plan does not represent approval as far as necessity for the development is concerned nor is it a commitment of Federal funds for any future development. It signifies a concurrence for planning purposes based on review of conformance with current standards for safety, utility, and efficiency.

(Complaint, Exhibit 4 at p. 2.)

*The Present Suit*

On December 4, 1984, Suburban O'Hare filed its complaint in this Court, together with a motion for a temporary restraining order and for a preliminary injunction, supported by extensive affidavits.[3] The Complaint, although lengthy, is in two counts. In Count I, Suburban O'Hare asserts that the FAA and the City defendants, in approving the ALP in the November 14, 1984 decision, violated the "letter and the spirit" of the Consent Decree; NEPA; the Airport and Airway Improvement Act of 1982, 42 U.S.C. § 2201, *et seq.* ("AAIA"); Section 176(c) of the Clean Air Act; and plaintiffs' "constitutional right to full disclosure of all relevant data, calculations and methodology." (Complaint, ¶ 172.) Suburban O'Hare alleges that it has a claim for relief in Count I both to enforce the Consent Decree and under the Administrative Procedure Act, 5 U.S.C. §§ 702, 706. (Complaint, ¶¶ 173, 175.) Suburban O'Hare prays that this Court declare that the November 14, 1984 FAA decision approving the Master Plan is "null, void and of no force and effect ..." and that this Court enjoin the defendants "from taking any steps in reliance" on that decision.[4]

■ Both the City defendants and the FAA have moved to dismiss Suburban

---

**3.** At a hearing on December 4, 1984 before this Court, Suburban O'Hare conceded that its motion for a temporary restraining order was prematurely brought because construction of Phase II projects was not set to proceed immediately as Suburban O'Hare thought. Thus, this Court denied the motion for a temporary restraining order as moot. A decision on Suburban O'Hare's motion for a preliminary injunction

has been held in abeyance pending resolution of the defendants' motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted.

**4.** Count II of the complaint is brought on behalf of plaintiff Lawrence Bieneman, incorporates all of the allegations of Count I, alleges injury to Bieneman in his person and property, and re-

O'Hare's complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[5] Because this Court holds that it lacks subject matter jurisdiction over this action, it does not reach the issues posed by the defendants' motions to dismiss for failure to state a claim upon which relief may be granted.

Finally, on January 14, 1984, Suburban O'Hare filed a Petition for Review in the United States Court of Appeals for the Seventh Circuit, in accordance with 49 U.S.C. § 1486(a), which is presently pending. Therefore, the dismissal by this Court of Suburban O'Hare's complaint for lack of subject matter jurisdiction does not affect Suburban O'Hare's substantive right to judicial review of the FAA's November 14, 1984 decision: such review must be sought in the first instance in the Court of Appeals. This Court's holding thus allows the Seventh Circuit to examine the jurisdictional issue at the inception of this case, thereby avoiding the potential waste of time, effort, and expense to both the parties and the judiciary of litigating the case to final judgment in the district court only to have that judgment reversed ultimately for lack of subject matter jurisdiction.

## DISCUSSION

I. *Exclusive Jurisdiction Vests In The Court of Appeals to Review FAA "Orders" Under Section 1486.*

In its complaint, Suburban O'Hare seeks to set aside the November 14, 1984 decision

of the FAA that approved the Master Plan and the ALP for O'Hare submitted by the City defendants. In addition to approving the ALP, that decision also made several other determinations under various FAA regulations promulgated under various sections of the Federal Aviation Act in Title 49 of the United States Code. The decision itself reflects that the FAA conducted its review pursuant to Parts 77, 152, and 157 of the FAA regulations, found in 14 C.F.R., respectively relating to: (1) obstruction evaluations for flight operations; (2) the federal airport aid program; and (3) notice requirements for airport construction or alteration. (Record of Decision, Complaint, Exhibit 4 at p. 19.) The FAA also granted exemptions pursuant to Part 139 of 14 C.F.R.

In addition to authority under the Consent Decree, the FAA's review pursuant to Parts 77, 157, and 139 of 14 C.F.R. clearly was conducted pursuant to authority vested in the FAA under Chapter 20 of Title 49; the FAA's review pursuant to Part 152 of 14 C.F.R. was conducted pursuant to authority under Chapter 31 of Title 49. The primary issue in this case is whether jurisdiction to review the FAA's November 14, 1984 decision vests in the district court or in the Court of Appeals.[6]

Contrary to the suggestion of the FAA, this issue is not simple. Courts have encountered substantial difficulty in determining when a challenged administrative action falls within the scope of a statute directing exclusive review in the Court of

quests a hearing in accordance with Section 554 of the APA, 5 U.S.C. § 554.

**5.** In addition, Suburban O'Hare has moved to compel the FAA to file the administrative record of its November 14, 1984 decision in this Court. After full briefing on the issue, and after a pretrial conference on January 30, 1985 this Court ordered that the FAA file the record in this Court on February 14, 1985 because a district court unquestionably has subject matter jurisdiction to do that which is necessary until it decides the issue of its subject matter jurisdiction. *United States v. United Mine Workers of America,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947). Moreover, this Court was mindful of

the fact that the FAA in any event was preparing the record for filing in the Seventh Circuit Court of Appeals because Suburban O'Hare had filed a protective Petition for Review in that Court on January 14, 1985, and 49 U.S.C. § 1486(d) requires the FAA to file the record in the Court of Appeals within 40 days thereafter. That date was subsequently extended to February 22, 1985 on the FAA's motion to extend the time for filing the record due to exigent circumstances.

**6.** All parties agree that the FAA's November 14, 1984 Record of Decision was a final agency action ripe for judicial review.

**1018**

Appeals. No less an authority than Professor Kenneth Culp Davis has stated that the law governing the jurisdiction for review of challenged agency action "is both inordinately complex and extremely confused." K. Davis, *Administrative Law Treatise* § 23.03–1, at 372 (Supp.1982). This complexity and confusion has spawned a number of law review articles. *See, e.g.,* Comment, *The Forum for Judicial Review of Administrative Action: Interpreting Special Review Statutes,* 63 B.U.L.Rev. 765 (1983); Currie and Goodman, *Judicial Review of Federal Administrative Action: Quest for the Optimum Forum,* 75 Colum. L.Rev. 1 (1975); Note, *Jurisdiction to Review Federal Administrative Action: District Court or Court of Appeals,* 88 Harv. L.Rev. 980 (1975).

■ Despite the abundance of case law and scholarly commentary on the issue generally, the law is well settled that exclusive jurisdiction vests in the Court of Appeals to review all final orders of the FAA made under Chapter 20 of Title 49. Title 49 U.S.C. § 1486(a) provides:

(a) *Any order, affirmative or negative, issued by the Board or Administrator under this chapter,* except any order in respect of any foreign air carrier subject to the approval of the President as provided in section 1461 of this title, *shall be subject to review by the court of appeals* of the United States or the United States Court of Appeals for the District of Columbia upon petition, filed within sixty days after the entry of such order, by any person disclosing a substantial interest in such order. After the expiration of said sixty days a petition may be filed only by leave of court upon a showing of reasonable grounds for failure to file the petition theretofore.

(Emphasis supplied.) Section 1486(d) states that the court "shall have exclusive jurisdiction to affirm, modify or set aside the order...."

In *Gaunce v. deVincentis,* 708 F.2d 1290 (7th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 417, 78 L.Ed.2d 354 (1983), the Seventh Circuit dismissed *sua sponte* an appeal from a district court judgment granting the defendants' motion for summary judgment. An airman claimed that the FAA violated her rights to procedural due process in revoking her airman's certificate. The FAA revoked the airman's certificate under its authority pursuant to Chapter 20 of Title 49. The Seventh Circuit held that Section 1486 expressly provides that any challenge to an FAA decision made under Chapter 20 can be brought only in the Court of Appeals, and dismissed the case for lack of subject matter jurisdiction in the district court:

And most importantly, in plain disregard of the express terms of section 1486 of the Act, which prescribes direct and exclusive review in the court of appeals, plaintiff instituted the present action in the district court. This action is in derogation of the well settled principle that collateral attacks upon administrative orders are not permissible. *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 48–50, 58 S.Ct. 459, 462–463, 82 L.Ed. 638 (1938); *Robinson v. Dow,* 522 F.2d 855, 858 (6th Cir.1975); *Oling v. Air Line Pilots Ass'n.,* 346 F.2d [270] at 276–277 [(7th Cir.1965)]; *see Administrative Procedure Act* § 10(b), 5 U.S.C. § 703 (1976) ("The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action ... in a court of competent jurisdiction."); *see also Denberg v. United States Railroad Retirement Board,* 696 F.2d 1193 (7th Cir. 1983). It is clear from the statutory scheme established by Congress that the F.A.A. order was not subject to collateral attack in the district court. *Robinson v. Dow, supra; Oling v. Air Line Pilots Ass'n., supra.* Thus the district court lacked subject matter jurisdiction over the claims asserted by plaintiff-appellant.

708 F.2d at 1291–93 (footnote omitted). In dismissing the case for lack of subject matter jurisdiction in the district court, the Seventh Circuit adhered to a long line of

decisions in this Circuit and others recognizing the congressional mandate in Section 1486 of exclusive jurisdiction to review Chapter 20 FAA orders in the Courts of Appeal.[7]

Thus, if the November 14, 1984 decision of the FAA was made solely under Chapter 20 of Title 49, subject matter jurisdiction to review that decision clearly vests only in the Court of Appeals under Section 1486. Suburban O'Hare sets forth three principal arguments to support its contention that the November 14, 1984 decision must be reviewed in the district court. First, Suburban O'Hare contends that the decision was made not under Chapter 20 of Title 49, but under Chapter 31 of Title 49, the federal airport aid statute. Accordingly, Section 1486, which applies only to FAA orders made under Chapter 20, does not vest exclusive jurisdiction to review the decision in the Court of Appeals. Closely tied to this argument is Suburban O'Hare's assertion that the district court clearly has subject matter jurisdiction to hear Suburban O'Hare's claim that the defendants violated the Consent Decree in the *Illinois v. Butterfield* litigation. Finally, Suburban O'Hare contends that even if the November 14, 1984 decision was made pursuant to Chapter 20 of Title 49, the decision does not constitute an "order" reviewable exclusively in the Court of Appeals under Section

1486 because the FAA administrative record is either nonexistent or is based upon disputed issues of fact which must be examined and reviewed in the first instance in the district court pursuant to the general jurisdictional grant of 28 U.S.C. § 1331 and Sections 702 and 706 of the Administrative Procedure Act. Each of these arguments is examined below.

II. *The November 14, 1984 FAA Decision Consisted Of FAA Orders Rendered Under Both Chapters 20 and 31 of Title 49.*

■ Suburban O'Hare contends that the November 14, 1984 decision of the FAA was not an "order" made under Chapter 20 and thus is not exclusively reviewable in the Court of Appeals under Section 1486 which provides for such exclusive review only for orders made under "this chapter." 49 U.S.C. § 1486(a). Instead, Suburban O'Hare asserts that the "order" challenged here is the FAA's substantive and procedural compliance with the Airport and Airway Improvement Act of 1982, 49 U.S.C. § 2201, *et seq.*,[8] and as such was made under Chapter 31 of Title 49.

Suburban O'Hare attached the November 14, 1984 letter approving the ALP and the 20 page Record of Decision of the FAA as Exhibits 3 and 4, respectively, to its complaint. As such, they are part of the

---

**7.** *See, e.g., City of Aurora v. Hunt,* 749 F.2d 1457, 21 ERC 2132 (10th Cir.1984) (Tenth Circuit exercised its jurisdiction to review an FAA rule issued under Chapter 20 and under 14 C.F.R. Part 77); *City of Alexandria v. Helms,* 728 F.2d 643 (4th Cir.1984) (Fourth Circuit reversed for lack of subject matter jurisdiction the district court's issuance of a preliminary injunction to prevent implementation of a Chapter 20 FAA order regarding flight patterns of Washington National Airport); *State of New York v. Federal Aviation Administration,* 712 F.2d 806, (2d Cir.1983) (Second Circuit affirmed the district court's dismissal, for lack of subject matter jurisdiction, of a challenge to the FAA's refusal to amend an airport operating certificate it had previously issued under 49 U.S.C. § 1428 (part of Chapter 20)); *Sima Products Corp. v. McLucas,* 612 F.2d 309 (7th Cir.1980); *cert. denied,* 446 U.S. 908, 100 S.Ct. 1834, 64 L.Ed.2d 260 (1980) (Seventh Circuit held that a challenge to regulations promulgated under 49 U.S.C. § 1356 (part of Chapter 20) governing inspections of passengers was

reviewable exclusively in the Court of Appeals); *City of Rochester v. Bond,* 603 F.2d 927 (D.C.Cir. 1979) (D.C.Circuit held that a "no hazard" determination of the FAA pursuant to 49 U.S.C. § 1501 (part of Chapter 20) was an order reviewable exclusively in the Court of Appeals, following other courts *"consistently holding that judicial review under these statutes is exclusive." Id.* at 934); *Oling v. Air Lines Pilots Association,* 346 F.2d 270 (7th Cir.1965) (Seventh Circuit reversed a challenge to an FAA action based on Section 408 (part of Chapter 20)).

**8.** The Airport and Airway Improvement Act of 1982 ("AAIA"), 49 U.S.C. § 2201, *et seq.*, is the current federal airport aid statute appearing in Chapter 31 of Title 49. Its immediate precessor was the Airport and Airway Development Act of 1970 (P.L. 91–248), which in turn was immediately preceded by the Federal Airport Act of 1946 (P.L. 377). Each of these statutes has always been codified separately from Chapter 20 of Title 49.

complaint pursuant to Rule 10 of the Federal Rules of Civil Procedure. Suburban O'Hare contends that by this approval, reflected in Exhibits 3 and 4, the FAA violated the letter and spirit of the Consent Decree and several federal laws, including the AAIA, NEPA, the Clean Air Act, and the APA. The November 14, 1984 decision reflects that the FAA relied upon 14 C.F.R. Part 77 (promulgated under Chapter 20), Part 157 (promulgated under Chapter 20), and Part 152 (promulgated under Chapter 31). In addition, the FAA granted the City an exemption from the 14 C.F.R. Part 139 regulations (promulgated under Chapter 20). Thus, of the four "orders" entered by the FAA, three were under Chapter 20.[9]

Suburban O'Hare does not contest the fact that the November 14, 1984 FAA decision constituted at least in part an "order" entered under Chapter 20. In its memorandum in opposition to the defendants' motion to dismiss, Suburban O'Hare stated: "Of the 'orders' entered by the FAA on November 14, 1984, two of those orders were under Chapter 20." (P. 4.) Suburban O'Hare contends that "[t]hese orders are not challenged in this action." (Pp. 4–5.) Suburban O'Hare further contends that because the November 14, 1984 FAA decision was also based on the AAIA, Chapter 31 of Title 49, the exclusive jurisdiction of the Court of Appeals to review the entire order under Section 1486 is usurped by the inclusion of this additional element. Indeed, Suburban O'Hare's allegation that the defendants have violated the Consent Decree is intimately related to its argument that the November 14, 1984 FAA decision should have been made properly under Chapter 31. That argument was succinctly summarized by Suburban O'Hare in its memorandum in opposition to the defendants' motion to dismiss, at pp. 16–17:

In this lawsuit, Plaintiffs also seek to enforce the 1982 Consent Decree which sets the legal framework for the substantive decision made by the FAA. As set forth in the Complaint and as admitted by Defendants, the Consent Decree remedied the past piecemeal practices followed by Chicago and the FAA in giving isolated grants, and required the FAA to make the substantive decisions normally made at the time grant applications were received now—at the time the entire Master Plan was submitted—rather than wait until individual isolated grant applications are received.

Chicago and the FAA admit these allegations for the purposes of these motions, and the FAA itself stated that it was making these decisions *now* in its November 14, 1984 approval. However, in their memoranda, Defendants make unsupported assertions that the requirements of the Airport and Airway Improvement Act of 1982 do not apply because no grant application has been made. That argument is exactly what the Consent Decree framework was intended to prevent by requiring the substantive decision to be made now rather than after the project was almost complete.

(Footnote omitted.)

Suburban O'Hare's argument does have some merit in that there is support in the

---

**9.** Part 157 states that it is promulated under 49 U.S.C. §§ 1350, 1354(a), and 1355. *See* 14 C.F.R. Part 157 at p. 156 (1984). Part 77 states that it is promulgated under 49 U.S.C. §§ 1304, 1348, 1354, 1431, and 1501. The FAA's authority for the grant to the City of an exemption from the clearance standards of airport taxiways under Part 139 of 14 C.F.R. arises from 49 U.S.C. §§ 1432 and 1421(c). All of these statutory references are part of Chapter 20. For example, Section 1350 states:

§ 1350. Establishment or construction of airports and landing areas not involving expenditure of Federal funds.

In order to assure conformity to plans and policies for, and allocations of, airspace by the Administrator under section 1348 of this title, no airport or landing area not involving expenditure of Federal funds shall be established, or constructed, or any runway layout substantially altered unless reasonable prior notice thereof is given the Administrator, pursuant to regulations prescribed by him, so that he may advise as to the effects of such construction on the use of airspace by aircraft.

By contrast, Part 152 of 14 C.F.R. was promulgated under the Airport and Airway Development Act of 1970, as amended, 49 U.S.C. § 1701, *et seq.*, which subsequently became part of Chapter 31 of Title 49.

Consent Decree, in the Final Environmental Impact Statement, and in the November 14, 1984 FAA decision itself for Suburban O'Hare's position that the parties to the Consent Decree contemplated that that decision would be rendered under the AAIA, Chapter 31. The defendants' contention that the AAIA is not applicable because it is uncontested that no federal funding has yet been sought for the Phase II construction is unpersuasive because it is equally uncontested that federal funds, in the amount of at least $43 million, will be sought ultimately to help fund the Phase II construction. The defendants can not avoid their obligations under the AAIA simply because they have not yet applied for such funding, particularly in light of Suburban O'Hare's allegations, which must be taken as true for purposes of these motions to dismiss, that such piecemeal after-the-fact funding of construction projects resulting in the expansion of O'Hare was precisely what the Consent Decree was designed to prevent. Moreover, after briefing was completed on these motions, the Court was informed that the City did indeed apply for a $1.2 million federal grant for Phase II construction as early as November 30, 1984, and the plaintiffs have been granted leave to amend their complaint to so allege.

Nonetheless, Suburban O'Hare has not demonstrated that the FAA's approval under Chapter 20 pursuant to Parts 77, 139, and 157 was either unnecessary or insubstantial. Neither has Suburban O'Hare alleged that those parts of the FAA's November 14, 1984 decision that are based on Chapter 20 are separable from those parts based on Chapter 31. Nor has Suburban O'Hare alleged that the FAA's Chapter 20 orders are a mere ruse to avoid review of the defendants' conduct pursuant to the Consent Decree and under the APA in this Court.

In light of the overwhelming weight of authority that mandates exclusive review in the Court of Appeals whenever a FAA decision based on Chapter 20 is challenged, *see* discussion below, this Court believes that it cannot exercise its general federal question jurisdiction to review the FAA November 14, 1984 decision which at least in part, as Suburban O'Hare concedes, consists of orders rendered pursuant to the FAA's statutory authority under Chapter 20 of Title 49. Thus, even if the defendants did in fact violate the Consent Decree as Suburban O'Hare contends by failing to "make the substantive decisions [required by the AAIA] *now* in its November 14, 1984 approval," it is undisputed that the November 14, 1984 FAA decision was made, at least in part, under Chapter 20 of Title 49. As such, it is reviewable only by the Court of Appeals under Section 1486.

The November 14, 1984 FAA decision is a unitary order approving, under various statutory requirements, the form that O'Hare will take when Phase II construction is completed. Suburban O'Hare challenges the FAA's procedural and substantive compliance with various federal laws in reaching that decision to approve the Master Plan and the ALP for O'Hare. Moreover, Suburban O'Hare seeks not to set aside an isolated component of the decision, but that this Court declare that "the November 14, 1984 FAA decision approving the City of Chicago's Master Plan project is null, void and of no force and effect ..." and that an injunction be entered restraining defendants "from taking any steps in reliance on the November 14, 1984 FAA decision...." Accordingly, Suburban's O'Hare's complaint is an attack on a single unitary order entered by the FAA. In conceding that the November 14, 1984 FAA decision is based in part on Chapter 20, Suburban O'Hare has in effect conceded that the entire decision must be reviewed only in the Court of Appeals.

Even if the November 14, 1984 FAA decision should have been made only pursuant to Chapter 31 of Title 49, the AAIA, the cases cited by Suburban O'Hare do not support its contention that the district court has general federal question jurisdiction under 28 U.S.C. § 1331 and the APA to review an order under Chapter 31. Suburban O'Hare contends that the jurisdictional issue before this Court is directly con-

trolled by the decisions in *Schwab v. Quesada,* 284 F.2d 140 (3d Cir.1960), and *City of Dallas v. Rentzel,* 172 F.2d 122 (5th Cir.1949), *cert. denied,* 338 U.S. 858, 70 S.Ct. 99, 94 L.Ed. 525 (1949), both involving the Federal Airport Act, a predecessor to the AAIA. Suburban O'Hare asserts that in these cases the FAA itself successfully argued to the Circuit Courts of Appeal that because decisions made under the Federal Airport Act were made under a Chapter in Title 49 different from Chapter 20, the exclusive jurisdiction provision of Section 1486 did not apply, thus rendering those decisions unreviewable in the Courts of Appeal. But none of the cases cited by Suburban O'Hare address the jurisdiction of the district court to review decisions under the Federal Airport Act. Indeed, in *Schwab,* the Third Circuit found no jurisdiction to review the decision under the Federal Airport Act because it held that the decision was unreviewable in any court. 284 F.2d at 142. In *City of Dallas,* the Fifth Circuit acknowledged the FAA's argument that the order under the Federal Airport Act was unreviewable in any court, but found it unnecessary to reach the issue. 172 F.2d at 123 and nn. 7, 8. *Cf. Morris v. Helms,* 681 F.2d 1162, 1164 (9th Cir.1982). Whatever the continuing validity of the *Schwab* and *City of Dallas* cases, particularly in light of the new AAIA which is at issue here, they do not stand for the proposition that if the Court of Appeals lacks jurisdiction to review an FAA order, the district court necessarily has such jurisdiction: the order may simply be unreviewable.

Because this Court holds that the FAA November 14, 1984 decision is reviewable in the Court of Appeals under Section 1486, this Court need not, and, therefore, does not decide whether a Chapter 31 FAA order pursuant to the AAIA is unreviewable in any court. To the contrary, district courts have assumed general federal question jurisdiction to decide cases brought under the AAIA as well as other federal statutes, although these courts have not directly addressed the jurisdictional issue because they were not directly confronted with it and because they unquestionably had jurisdiction over claims based on other federal statutes. *See, e.g., Life of the Land v. Brinegar,* 485 F.2d 460 (9th Cir. 1973), *cert. denied,* 416 U.S. 961, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974); *Citizens Airport Committee of Chesterfield County v. Volpe,* 351 F.Supp. 52 (E.D.Va.1972).

It is worth noting, however, that Chapter 31 contains no judicial review provision itself. Moreover, the Supreme Court has recently held that neither the general federal question jurisdiction under 28 U.S.C. § 1331 nor the APA provide an independent basis for establishing jurisdiction in the district court to review an agency's decision when a statute directs an exclusive form of judicial review:

> With respect to our holding that there is no jurisdiction pursuant to § 1331, the dissent argues that § 405(h) [prescribing a different form of review for Medicare claims] is not a bar to § 1331 jurisdiction because Ringer's challenge to the Secretary's rule is "arising under" the Administrative Procedure Act, not the Medicare Act. *Post,* at 647 [104 S.Ct. at 2025], But the dissent merely resurrects an old argument that has already been raised and rejected before by this Court in *Weinberger v. Salfi* [422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) ], *supra.* As we have already noted earlier, *ante,* at 636 [104 S.Ct. at 2022], the Court rejected the argument that the claimant in *Salfi* could bring his constitutional challenge to a Social Security Act. Ringer's claim may well "aris[e] under" the APA in the same sense that Salfi's claim arose under the Constitution, but we held in *Salfi* that the constitutional claim was nonetheless barred by § 405(h). It would be anomalous indeed for this Court to breathe life into the dissent's already discredited statutory argument in order to give greater solicitude to an APA claim than the Court thought the statute allowed it to give to the *constitutional* claim in *Salfi.*

*Heckler v. Ringer,* —— U.S. ——, 104 S.Ct. 2013, 2025–26, 80 L.Ed.2d 622 (1984); *see*

*also Califano v. Sanders,* 430 U.S. 99, 104–09, 97 S.Ct. 980, 983–86, 51 L.Ed.2d 192 (1977) (Supreme Court held that Section 702 of the APA must be used together with 28 U.S.C. § 1331 and with another substantive statute to confer subject matter jurisdiction on the district court: Section 702 and 28 U.S.C. § 1331 alone do not confer jurisdiction).

The holding of this Court that the November 14, 1984 decision of the FAA is reviewable only in the Court of Appeals because it is a mixed decision made under the FAA's authority based on both Chapter 20 and Chapter 31 of Title 49 is consistent with the law of this and other Circuits. In cases involving the review of FAA orders which also contained claims made under other statutes or the Constitution, and in cases involving parallel statutes with provisions similar to Section 1486 vesting exclusive jurisdiction in the Court of Appeals for judicial review of final agency orders, this Circuit and others have uniformly held that judicial review rests exclusively in the Court of Appeals. For example, as noted above, in *Gaunce v. deVincentis,* 708 F.2d 1290 (7th Cir.1983) *cert. denied,* — U.S. ——, 104 S.Ct. 417, 78 L.Ed.2d 354 (1983), the Court of Appeals *sua sponte* dismissed for lack of jurisdiction on appeal from a district court judgment upholding the procedural due process afforded an airman by the FAA in a hearing relating to the revocation of an airman's certificate. As here, the plaintiff in *Gaunce* raised constitutional claims, but the Seventh Circuit held that even the assertion of a claim under the Constitution, jurisdiction over which indisputably vests in the district court under 28 U.S.C. § 1331, cannot divest the Court of Appeals' exclusive jurisdiction to decide the entire order:

> The statutorily prescribed requirements cannot be dispensed with merely because the administrative proceeding dealt with an agency's proof of specified regulatory violations, while appellant is raising a due process constitutional claim in the judicial proceeding. So long as effective means for judicial review are ultimately available where the constitutional claims

can be raised, appellant may not dispense with the requirement of prior administrative review, otherwise judicial review would be an abstract process.

*Id.* at 1293.

In *City of Alexandria v. Helms,* 728 F.2d 643 (4th Cir.1984), the Fourth Circuit reversed a preliminary injunction issued by the district court to prevent implementation of an FAA order relating to a "scatter plan" for flight patterns at Washington's National Airport instituted by the FAA to more equitably distribute aircraft noise among area surrounding the airport. The court held that the district court lacked subject matter jurisdiction because Section 1486 "vests review of FAA orders exclusively in the Courts of Appeals." *Id.* at 645. The Court of Appeals flatly rejected the plaintiffs' contention that their claims under NEPA provided an independent basis for jurisdiction in the district court:

> Alexandria and Arlington additionally contend that the National Environmental Policy Act (NEPA) provides an independent basis for district court jurisdiction in this case. *Cf. City of Irving v. Federal Aviation Administration,* 539 F.Supp. 17, 34 (N.D.Tex.1981) (FAA's decision not to issue an EIS was subject to review in the district court when there was no order to review and only claim was under NEPA). However, when review of an agency order is at issue and when Congress has vested exclusive jurisdiction over that review in the Courts of Appeals, NEPA does not provide independent grounds for district court jurisdiction.

*Id.* at 646 (footnote omitted).

Similarly, in *City of Rochester v. Bond,* 603 F.2d 927 (D.C.Cir.1979), the District of Columbia Circuit Court of Appeals rejected the argument that plaintiff's NEPA claim provided a basis for concurrent district court jurisdiction for review of an FAA advisory determination that construction of a radio antenna near an airport would be "no hazard," a determination which the court deemed to constitute a final order

exclusively reviewable only in the Court of Appeals:

> First, we disagree that the district court may exercise concurrent jurisdiction merely because a violation of NEPA is alleged. The allegation may be raised directly in the courts of appeals; and insofar as it may affect the lawfulness of a directly appealable order we think it must be.

*Id.* at 936 (footnotes omitted).[10]

The Seventh Circuit has also held that the inclusion of a NEPA claim provides no basis for concurrent jurisdiction permitting district court review of an agency's decision. In *City of West Chicago, Illinois v. United States Nuclear Regulatory Comm'n.*, 701 F.2d 632 (7th Cir.1983), the court affirmed the district court's dismissal, for lack of subject matter jurisdiction, of a suit challenging the Nuclear Regulatory Commission's order allowing the demolition of certain buildings under the parallel judicial review provision, 28 U.S.C. § 2342(4), concerning review of the Commission's Order. The Seventh Circuit concluded that the district court lacked jurisdiction to determine if the agency's order complied with NEPA:

> Despite the admission in its brief, the City continues to argue that the district court had jurisdiction to review the claim of illegal segmentation under NEPA. *Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor*, 619 F.2d 231 (3d Cir.1980), certiorari denied *sub nom. General Pub. Utilities Corp. v.*

*Susquehanna Valley Alliance*, 449 U.S. 1096, 101 S.Ct. 893, 66 L.Ed.2d 824. See *supra* at 650–652. Suffice it to say that as in this case, where final agency action brings an order within the ambit of 28 U.S.C. § 2342(4), the district court has no concurrent jurisdiction with the court of appeals to review the order for NEPA compliance. *City of Rochester v. Bond*, 603 F.2d 927, 936 (D.C.Cir.1979).

*Id.* at 652 n. 21.[11] *See also Sierra Club v. United States Dept. of Transportation*, 753 F.2d 120, No. 83–1832 (D.C.Cir.1985) (Court of Appeals exercised jurisdiction under Section 1486 to decide a challenge to two FAA orders entered under Chapter 20 even though the petitioners claimed that, in addition to NEPA, a section in another chapter of Title 49, 49 U.S.C. § 303(c), had been violated by the order); *City of Aurora v. Hunt*, 749 F.2d 1457, 21 ERC 2132 (10th Cir.1984) (Tenth Circuit reviewed an FAA rule issued under Chapter 20 and also decided a challenge under NEPA pursuant to its exclusive jurisdiction under Section 1486). Thus, Suburban O'Hare's claims under Chapter 31 of Title 49, as well as its claims under NEPA, and the Clean Air Act, and the due process constitutional claim, cannot defeat Section 1486 exclusive jurisdiction in the Court of Appeals of an FAA decision rendered in part under Chapter 20.

The Seventh Circuit has stated repeatedly that even where doubt exists as to whether jurisdiction properly lies in the Court of Appeals or the district court to review an agency decision which arguably

---

**10.** In a footnote, *Bond* distinguished *State of Illinois ex rel. Scott v. Butterfield*, 396 F.Supp. 632 (N.D.Ill.1975), because there was no final agency action by the FAA in the *Illinois v. Butterfield* litigation at that time. 603 F.2d at 936, n. 51. Clearly the district court had subject matter jurisdiction in the *Illinois v. Butterfield* litigation under 28 U.S.C. § 1331 when it entered the Consent Decree in 1982. Suburban O'Hare's argument that the decision of the district court set forth in *State of Illinois ex rel. Scott v. Butterfield*, 396 F.Supp. 632 (N.D.Ill. 1975) that it possessed subject matter jurisdiction is *res judicata* here is disingenuous in light of the fact that no final FAA orders, Chapter 20 or otherwise, which the district court was asked to review, had issued at that time.

**11.** The district court's decision in *City of West Chicago*, which was affirmed, also held that the inclusion of a due process claim did not alter the Court of Appeals' exclusive jurisdiction:

> Involved here is an express jurisdictional mandate to the court of appeals which this court must respect. Although the plaintiff is raising a constitutional claim, it is directed to, and arises from the NRC's grant of a license amendment under the AEA. Therefore, this constitutional challenge pertains to the final order issued by the NRC and must be reviewed by the court of appeals.

*City of West Chicago, Illinois v. United States Nuclear Regulatory Comm'n*, 542 F.Supp. 13, 15 (N.D.Ill.1982). (Citations omitted.)

may fall within the ambit of an exclusive Court of Appeals' jurisdictional provision, all doubt must be resolved in favor of direct review by the Court of Appeals. *E.g., Indiana & Michigan Electric Co. v. United States Environmental Protection Agency,* 733 F.2d 489, 491 (7th Cir.1984) (A "judge" made presumption [exists] in favor of court of appeals review in doubtful cases ... [because] district court review adds another layer to the review process....); *Field Container Corp. v. Interstate Commerce Comm'n.,* 712 F.2d 250, 255 (7th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 701, 79 L.Ed.2d 167 (1984) ("... the policy of routing review proceedings to the courts of appeals directly where the statute will allow this entitles us to resolve our doubts in favor of [court of appeals] jurisdiction...."); *Denberg v. United States Railroad Retirement Board,* 696 F.2d 1193, 1197 (7th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 1706, 80 L.Ed.2d 180 (1984) (Any jurisdictional ambiguity is resolved in favor of Court of Appeals jurisdiction.). Indeed, even Suburban O'Hare's assertions that this Court must exercise its jurisdiction under § 1331 and the APA to decide its claims that the defendants violated the Consent Decree cannot vitiate the exclusive jurisdiction of the Court of Appeals in the first instance.[12]

## III. *Suburban O'Hare's Allegations Of Consent Decree Violations Do Not Affect The Exclusive Jurisdiction Of the Court Of Appeals.*

Suburban O'Hare asserts that the Consent Decree entered into between the parties in the *Illinois v. Butterfield* litigation provided that the FAA was to approve or disapprove Chicago's 20 year long-term development program to meet Chicago's future aviation needs through the "Master Plan" decision-making process. To accomplish this, the FAA was to compare Chica-

go's Master Plan proposal with all other alternatives to meet Chicago's long-term aviation needs, and toward this end the FAA was to prepare or complete a Final Environmental Impact Statement pursuant to the requirements of NEPA. According to Suburban O'Hare, the Consent Decree provided a procedural framework in which both FAA substantive and procedural decisions, normally not undertaken until the receipt of a federal grant application, would be made at the time the Master Plan was submitted and before any Phase II construction was to begin.

By entering into the Consent Decree, the plaintiffs in the *Illinois v. Butterfield* litigation purportedly received the promise of the FAA and the City defendants that construction of Phase II would not begin until the defendants followed the procedural prerequisites set forth in the Decree leading to a decision to approve or disapprove the Master Plan. In turn, the defendants allegedly were allowed to proceed with Phase I construction without preparing an Environmental Impact Statement and without ongoing litigation over Phase I construction.

As an initial matter, it must be noted that if Suburban O'Hare was indeed interested in enforcing the terms of the Consent Decree, as it contends, it should have filed a motion for such enforcement and the imposition of civil contempt and other relief in the *Illinois v. Butterfield* litigation, Case No. 74 C 2410. Instead, Suburban O'Hare filed a new complaint which was randomly assigned to this Court. Suburban O'Hare states that in filing a new complaint it merely followed the directions of the Office of the Clerk of this District. Suburban O'Hare allegedly was informed by that Office that the *Illinois v. Butterfield* case was closed for administrative purposes when the Consent Decree was entered in October, 1982. Moreover, Judge

---

**12.** *See Assure Competitive Transportation, Inc. v. United States,* 629 F.2d 467, 472 (7th Cir.1980), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 941, 67 L.Ed.2d 110 (1981) (court held that exclusive jurisdiction lies in the court of appeals to review an I.C.C. order even though the order itself was

not directly attacked because "the practical effect of a successful suit would contradict or countermand a Commission order," *quoting B.F. Goodrich Co. v. Northwest Industries, Inc.,* 424 F.2d 1349, 1353–54 (3d Cir.1970), *cert. denied,* 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970)).

Roszkowski, who entered the Consent Decree, has since transferred to the Western Division of the United States District Court for the Northern District of Illinois. According to Suburban O'Hare:

> The office of the Clerk of the Court has advised us that when a matter is presented to the assignment desk that relates to a *closed* case that had been assigned to Judge Roszkowski, the assignment desk would assign the matter to a new judge by lot. That procedure was followed in this case.

Plaintiff's Memorandum On Consent Decree Issues at p. 10 n. 5.

Unfortunately, however, Suburban O'Hare neglects to mention that the Office of the Clerk never informed it to file a *new* complaint in the district court. This Court has been informed by Stuart Cunningham, the Clerk, that Suburban O'Hare properly should have filed a motion for enforcement of the Consent Decree in the *Illinois v. Butterfield* litigation, Case No. 74 C 2410, at which point it would have been reassigned at random *by order of the Executive Committee* from Judge Roszkowski's docket if Judge Roszkowski did not wish to retain the case.

In this instance, although the result may have been the same because the matter ultimately was assigned to this Court at random by lot, insistence on the proper procedure is not trivial. First, Judge Roszkowski, the judge who entered the Consent Decree and who was familiar with the progress of the *Illinois v. Butterfield* litigation to that point, should have been given the opportunity to retain it. Judicial economy dictates such a result as this Court was forced to search through three containers of court files from the federal warehouse of this district to familiarize itself with the case.[13] Second, this Court hesitates to establish a precedent of allowing the procedure adopted by Suburban O'Hare to be followed in the future. Because this Court and others in this District are burdened with literally hundreds of cases, it is both wasteful and counter-productive to file a new complaint whenever enforcement of a previously-entered consent decree in another case is sought.[14]

■ Nonetheless, Suburban O'Hare quite properly argues that there is no question that subject matter jurisdiction exists generally in the district court to enforce its own consent decree. In the Consent Decree entered in the *Illinois v. Butterfield* litigation, the district court expressly retained jurisdiction to enforce the decree, but even had it not done so, it is well-settled that a district court has ancillary jurisdiction to enforce its own consent decree. *Sarabia v. Toledo Police Patrolman's Ass'n.*, 601 F.2d 914 (6th Cir.1979); *see generally*, Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d.* § 3513. Although the normal remedy for a consent decree violation is the imposition of civil contempt, *see, e.g., United States v. Board of Education of the City of Chicago*, 744 F.2d 1300, 1308 (7th Cir. 1984); *Shakman v. Democratic Organization of Cook County*, 533 F.2d 344 (7th Cir.1976), *cert. denied*, 429 U.S. 858, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976), the court may award any appropriate relief in addition to enforcing the decree. *See, e.g., Shakman, supra* at 351 (awarding attorneys' fees and expenses as well as compensatory damages); *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir.1979) ("The district court is not free to exercise its discretion and withhold an or-

---

**13.** Many of the court documents in the *Illinois v. Butterfield* litigation were missing from these containers. Indeed, because the Consent Decree itself was missing, and because Suburban O'Hare omitted to attach it to the complaint and then belatedly submitted a version of the Consent Decree different from that submitted by the defendants, much needless time and energy were devoted to searching for it.

**14.** The cases cited by Suburban O'Hare as precedent for the procedure it followed here of filing a new complaint simply do not support such a procedure. For example, in *Sarabia v. Toledo Police Patrolman's Association*, 601 F.2d 914 (6th Cir.1979), nothing in the court's opinion indicates that the enforcement order appealed from was entered in any case but the original case in which the consent decree was entered.

der in civil contempt awarding damages, to the extent they are established.").

Despite the existence of jurisdiction generally to enforce its own judgments, the question posed in this case is whether the district court *must exercise* its jurisdiction to enforce a Consent Decree that in essence requires it to review an agency decision which Congress has mandated by statute is reviewable only in the Court of Appeals. This question is a matter of first impression so far as this Court is able to determine.[15] For the reasons set forth below, this Court holds that it cannot exercise subject matter jurisdiction to enforce the Consent Decree under the circumstances presented by this case.

First, the cases discussed in Sections I and II of this Opinion unequivocally hold that the assertion of any claim for relief over which the district court has general federal question jurisdiction does not divest the exclusive jurisdiction of the Court of Appeals to review an FAA decision based in part on Chapter 20 under Section 1486. For example, in *Gaunce v. deVincentis*, 708 F.2d 1290, 1293 (7th Cir.

1983), *cert. denied,* — U.S. ——, 104 S.Ct. 417, 78 L.Ed.2d 354 (1983), the plaintiff's assertion of a due process constitutional claim, over which a district court unquestionably possesses general federal question jurisdiction, had no affect on the Seventh Circuit's holding that jurisdiction vests exclusively in the Court of Appeals to review a Chapter 20 order.[16]

Similarly, Suburban O'Hare's assertion of the defendants' Consent Decree violations cannot deprive the Court of Appeals of its exclusive jurisdiction conferred by statute to review the FAA decision at issue in this case in the first instance. The Court of Appeals may exercise jurisdiction over the enforcement of the Consent Decree as well as its exclusive jurisdiction under Section 1486 because it may exercise jurisdiction over any proceedings which are incidental or ancillary to an original action where original jurisdiction over the action lies in the Court of Appeals.[17] Because the Court of Appeals is capable of deciding all of the issues raised by Suburban O'Hare in conducting its Chapter 20 review, the Con-

**15.** From the inception of this case, this Court has repeatedly asked the parties to brief, by citing relevant authority, the issue of whether Suburban O'Hare's claim of Consent Decree violations affects the exclusive jurisdiction of the Court of Appeals to review the FAA November 14, 1984 decision. Neither the FAA nor the City defendants have cited any cases, and none of the cases cited by Suburban O'Hare are on point. For example, in *Motorola, Inc. v. Computer Displays International,* 739 F.2d 1149 (7th Cir.1984), the Seventh Circuit ruled that it did not possess jurisdiction to review a district court's finding of civil contempt for violation of a consent decree in the absence of a district court order that included the imposition of an appropriate sanction as well as the finding of contempt. *Motorola* does not stand for the proposition that a Court of Appeals never has original jurisdiction to enforce a consent decree when the exercise of that jurisdiction is necessary to effectuate its exclusive jurisdiction to review a Chapter 20 order. To the contrary, another case cited by Suburban O'Hare, *Brennan v. Winters Battery Manufacturing Co.,* 531 F.2d 317 (6th Cir.), *cert. denied, sub. nom., Winters Battery Manufacturing Co. v. Usery,* 425 U.S. 991, 96 S.Ct. 2202, 48 L.Ed.2d 815 *reh. denied,* 429 U.S. 873, 97 S.Ct. 192, 50 L.Ed.2d 155 (1976), suggests that a Court of Appeals does

indeed possess original jurisdiction to enforce consent decrees: "Enforcement by judicial decree provides a basis for contempt proceedings in this court in event of noncompliance." *Id.* at 321 (citation omitted). Similarly, the case of *District of Columbia v. Train,* 533 F.2d 1250 (D.C.Cir.1976), also cited by Suburban O'Hare, does not support its argument that Courts of Appeal may never hear cases involving consent decrees. To the contrary, the court's opinion suggests that the Court of Appeals could properly decide the consent decree issues if the decree was within the scope of exclusive statutory grant of jurisdiction. *Id.* at 1254. *See also* n. 17 and accompanying text, *infra.*

**16.** *See also* the district court's decision in *City of West Chicago, Illinois v. United States Nuclear Regulatory Comm'n,* 542 F.Supp. 13, 15 (N.D.Ill. 1982), *affd,* 701 F.2d 632 (7th Cir.1983), quoted at n. 11, *supra.*

**17.** As the Seventh Circuit stated in *Natural Gas Pipeline Co. v. Federal Power Comm'n,* 128 F.2d 481, 484 (7th Cir.1942), "the court may by its own orders protect the rights of the parties in any manner in which any trial court of equity or general jurisdiction might do so in an injunction suit."

sent Decree cannot affect subject matter jurisdiction over this case.

■■■ Second, parties cannot by their agreement alone confer subject matter jurisdiction over a case which would not otherwise exist. *Green v. Department of Commerce*, 618 F.2d 836, 839 (D.C.Cir.1980); *Sadat v. Mertes*, 615 F.2d 1176 (7th Cir. 1980). Thus, even though parties may, by entering into a consent decree, waive certain rights to which they otherwise might be entitled,[18] they may not waive the right to exclusive review of a Chapter 20 order under Section 1486 in the Court of Appeals by entering into a consent decree and thereby confer such jurisdiction by agreement on the district court.

Third, the Consent Decree in the *Illinois v. Butterfield* litigation by its terms excludes from its scope a review of the actual FAA decision reached in approving or disapproving the Master Plan. The operative paragraph of the Decree, states: "The FAA has not made any determinations with respect to [the Master Plan approval] and this Decree does not bind the FAA with regard to any determinations it may make respecting these matters." (Consent Decree, ¶ 1g at p. 4.) In one sense, this language adds nothing because it merely states the obvious: the FAA was not bound by the Consent Decree itself to either approve or disapprove the Master Plan proposal after meeting the procedural and substantive requirements of the Decree and the various laws the parties were bound to follow. On the other hand, this language is consistent with the FAA's argument that it never intended to, and never did, enter into a Consent Decree which would render any decision it made on the Master Plan reviewable in the district court.

Finally, at a pretrial conference held in this Court on January 30, 1985, Suburban O'Hare in effect conceded that its claims under the Consent Decree afford Suburban O'Hare substantially the same relief as it

seeks under its claims brought pursuant to the APA. (Transcript of Proceedings at pp. 71–72.) In fact, Count I of the complaint is grounded both in the APA and in the Consent Decree. If the Consent Decree adds nothing to the complaint, then the exclusive jurisdiction of the Court of Appeals to review the November 14, FAA decision under Section 1486 cannot be altered by the Consent Decree.

This Court's holding that the existence of the Consent Decree and Suburban O'Hare's claims thereunder do not affect the exclusive jurisdiction of the Court of Appeals to review the November 14, 1984 FAA decision does not suggest that the Consent Decree was never enforceable in the district court. Contrary to the defendants' suggestion, the Consent Decree is not a useless document that provides no substantive rights to Suburban O'Hare. Subject matter jurisdiction to enforce the Decree and to address any claimed violations of the various laws that the defendants bound themselves to follow in the Decree unquestionably existed in the district court before November 14, 1984, the date the FAA rendered its decision. Once that decision issued, however, jurisdiction vested solely in the Court of Appeals to review it pursuant to Section 1486 because it was rendered under both Chapter 20 and Chapter 31 of Title 49.

IV. *The November 14, 1984 FAA Decision Is An "Order".*

■■■ Suburban O'Hare argues that, should this Court decide that the November 14, 1984 decision of the FAA approving the Master Plan and the ALP for Phase II construction at O'Hare falls within the ambit of Section 1486 because it was at least in part made under Chapter 20, then it is not an "order" within the meaning of Chapter 20. Suburban O'Hare's contention is based on the following reasoning:

---

18. For example, in this case, it is not inconceivable, as the City defendants have conceded, that the defendants might have waived their right by entering into the Consent Decree not to be subject to a private right of action for violations of certain substantive laws such as the Clean Air Act. *See* Transcript of Proceedings of January 30, 1985 before this Court at pp. 55–57.

1) The scope of judicial review provided in Section 1486 is that the FAA's factual findings are subject to review under the "substantial evidence" test. 49 U.S.C. § 1486(e).

2) The "substantial evidence" test necessarily contemplates that an agency adjudicatory hearing "on the record" was conducted pursuant to Sections 556 and 557 of the APA. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 402 U.S. 402, 414, 91 S.Ct. 814, 822, 28 L.Ed.2d 136 (1971).

3) In this case, no FAA hearing under Sections 556 and 557 of the APA was conducted because the FAA is not statutorily required to conduct such a hearing by Title 49.

4) Where no formal administrative record has been prepared, or where there are disputes about the contents of the *Overton Park* record of the agency whose decision is the result of informal rather than a formal adjudication, the district court must exercise its general federal question jurisdiction to review the decision in the first instance to resolve all disputed issues of fact.[19] Moreover, the discovery procedures available in the district court are essential to delineate the extent of the administrative record.

As the FAA points out, Suburban O'Hare's argument is premised upon twisting the logic of the Supreme Court's holding in *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). Suburban O'Hare contends that because a "substantial evidence"

test is authorized under the APA only when an agency conducts a formal adjudicatory hearing under Sections 556 and Section 557, this requires the reverse: *i.e.*, where, as in Section 1486, a "substantial evidence" test is required, the agency must have conducted a formal Sections 556, 557 adjudicatory hearing. The problem with this argument is that it addresses only the scope of or the standard for judicial review and is not directed at all to the reviewing court's subject matter jurisdiction to conduct the review.

Both the Seventh Circuit and other Circuit Courts of Appeal have held that application of a "substantial evidence" test under Section 1486 is solely a question of the court's scope of review. *Aircraft Owners and Pilots Association v. Federal Aviation Administration*, 600 F.2d 965 (D.C. Cir.1979); *Rombough v. Federal Aviation Administration*, 594 F.2d 893 (2d Cir. 1979); *Starr v. Federal Aviation Administration*, 589 F.2d 307 (7th Cir.1978); *Tiger International, Inc. v. Civil Aeronautics Board*, 554 F.2d 926 (9th Cir.1977), *cert. denied*, 434 U.S. 975, 98 S.Ct. 532, 54 L.Ed.2d 467 (1977). Rather than considering the issue to be a jurisdictional question, these courts clearly considered it only to be related to the scope of judicial review and have resolved it by applying an "arbitrary and capricious" standard to review of Section 1486 orders where no formal adjudicatory hearing was required or conducted.[20]

In *Sima Products Corp. v. McLucas*, 612 F.2d 309 (7th Cir.1980), *cert. denied*, 446 U.S. 908, 100 S.Ct. 1834, 64 L.Ed.2d 260 (1980), the Seventh Circuit squarely held

**19.** Suburban O'Hare contends that the disputed issues of fact in this case include disputes in the following major areas:

  "A. The metropolitan aircraft operations demand and the traffic allocation between O'Hare and Midway (i.e., the traffic splits of the metropolitan demand).
  B. The 'capacity' of O'Hare to accommodate its share of the metropolitan aircraft operations demand and the delay associated with that capacity assumption.
  C. The alternatives to O'Hare expansion to accommodate the forecast aircraft operations demand.

D. The determinations made under Section 176(c) of the Clean Air Act and the related FAA regulations cited in the Complaint."
Suburban O'Hare's Motion For An Order To Compel Federal Defendants To File The Record, at pp. 9–10.

**20.** As the court stated in *Aircraft Owners and Pilots Assoc. v. Federal Aviation Administration*, 600 F.2d 965, 971 n. 28 (D.C.Cir.1979), there is no real functional difference between the "substantial evidence" and "arbitrary and capricious" tests, and thus this distinction is largely only one of semantics.

that any issue over the adequacy or completeness of an administrative record is not a jurisdictional issue. After the district court dismissed for lack of subject matter jurisdiction a challenge to an FAA regulation regarding the use of x-ray devices at airports, the plaintiff argued that the FAA's action could not be an "order" because the administrative record contained disputed issues of fact and was inadequate. The Seventh Circuit rejected this argument, stating:

This argument misses the point: a factual hearing before the district court judge is not necessary if judicial review is based on the agency record. *See Investment Company Institute [Board of Governors of the Federal Reserve System], supra,* 551 F.2d [1270] at 1276 [(1977)], citing Currie & Goodman, *Judicial Review of Federal Administrative Action: Quest for the Optimum Forum,* 75 Colum.L.Rev. 1 (1975); Verkuil, *Judicial Review of Informal Rulemaking,* 60 Va.L.Rev. 185 (1974). Moreover, where factfinding within the competence of the agency is required, section 1486(a) permits the case to be remanded to the agency for further factual development if the administrative record is inadequate for review. Under such circumstances it makes no difference whether the reviewing court is a court of appeals or a district court, and 'there seems to be no reason to inject another tribunal into the process.' *Environmental Defense Fund, Inc. v. Hardin,* 138 U.S.App.D.C. 391, 396–397, 428 F.2d 1093, 1098–99 (D.C.Cir.1970).

*Id.* at 313–14.

The Supreme Court has also rejected Suburban O'Hare's argument that where one party disputes the adequacy or factual basis underlying an agency's administrative record, jurisdiction properly rests only in the district court to the exclusion of a statutory grant of exclusive jurisdiction in the Court of Appeals. In *FCC v. ITT World Communications, Inc.,* — U.S. ——, 104 S.Ct. 1936, 80 L.Ed.2d 480 (1984), ITT contended, just as Suburban O'Hare contends here, that jurisdiction was vested

in the district court under the APA to review FCC orders that were reviewable by statute exclusively in the Court of Appeals because an insufficient record existed, the contents of which ITT disputed. The Supreme Court held that the sufficiency of the administrative record is irrelevant to the jurisdictional issue:

Respondents contend that these provisions [5 U.S.C. §§ 703, 704] confer jurisdiction in the present suit because the record developed upon consideration of the rulemaking petition by the agency does not enable the Court of Appeals fairly to evaluate their ultra vires claim. *If, however, the Court of Appeals finds that the administrative record is inadequate, it may remand to the agency, or in some circumstances refer the case to a special master.* Indeed, in the present case, the Court of Appeals has remanded the case to the agency for further proceedings. We conclude that the District Court lacked jurisdiction over respondents' *ultra vires* claim.

104 S.Ct. at 1940. (Citations omitted; emphasis supplied.)

Similarly, in *Harrison v. PPG Industries, Inc.,* 446 U.S. 578, 100 S.Ct. 1889, 64 L.Ed.2d 525 (1980), involving a challenge to certain EPA orders in informal adjudications subject to Court of Appeals jurisdiction under § 307(b)(1) of the Clean Air Act, the Supreme Court rejected the view that the district court was the preferable forum because of the availability of discovery to augment the record. The Court noted:

This is an argument to be addressed to Congress, not to this Court. It is not our task to determine which would be the ideal forum for judicial review of the Administrator's decision in this case. Rather, we must determine what Congress intended when it vested the courts of appeals with jurisdiction under § 307(b)(1) to review "any other final action." The language of the statute clearly provides that a decision of the sort at issue here is reviewable in a court of appeals, and nothing in the legislative

history points to any different conclusion.

446 U.S. at 593, 100 S.Ct. at 1898. (Citations omitted; footnote omitted.)

And, in following the holding of the Supreme Court in *ITT, supra,* the District of Columbia Circuit rejected its own prior precedents, cited here as well by Suburban O'Hare, stating, "We find untenable any suggestion that appellate review of nonfinal agency action may be inadequate due to Court of Appeals' inability to take evidence." *Telecommunications Research and Action Center v. FCC,* 750 F.2d 70 (D.C.Cir.1984).

Suburban O'Hare's attempt to distinguish these cases on the basis that they involved orders that resulted from "rulemaking" rather than "informal adjudication" is unavailing. *Harrison v. PPG Industries, Inc.,* 446 U.S. 578, 100 S.Ct. 1889, 64 L.Ed.2d 525 (1980), clearly did involve the review of orders that can only be properly characterized as "informal adjudications" as is plainly apparent from the Supreme Court's description of those orders as "agency action predicated on neither formal adjudication nor informal rulemaking...." 446 U.S. at 593, 100 S.Ct. at 1898. In addition, the authorities heavily relied upon by Suburban O'Hare in support of their argument that district court review in the first instance is most proper whenever informal agency adjudication is at issue, Professors David Currie and Frank Goodman, emphasize that the distinctions they had drawn between informal adjudication and formal rulemaking are not clean cut:

> Informal adjudication, we repeat, frequently does generate an administrative record suitable for the purpose of review. Moreover, scholars and practioners of administrative law are coming to recognize a need for greater procedural regularity in the field of informal agency action. The reforms they contemplate—including a requirement that the administrator state the facts and reasons upon which he bases his decision—would, as a byproduct, yield more adequate records.

Currie and Goodman, *Judicial Review of Federal Administrative Action: Quest for the Optimum Forum,* 75 Colum.L.Rev. 1, 57–58 (1975) (footnotes omitted).

Particularly in this light, it is significant that the administrative record of the November 14, 1984 FAA decision in this case filed in this Court on February 22, 1985 is voluminous, it is well in excess of 10,000 pages, and it contains both hearing transcripts and public comments. Although this Court makes no finding as to the adequacy of the record or as to whether the record does in fact contain certain allegedly missing crucial "data, calculations and methodology" or resolve Suburban O'Hare's allegations of disputed issues of fact, any challenge to the adequacy of the record is not jurisdictional. Moreover, given limited judicial resources, a review of the administrative record for its adequacy should be accomplished only once, most properly by the Court of Appeals under Section 1486.

Thus, although some courts once considered judicial review provisions based upon agency "orders" as contemplating "review of a decision based on evidence presented in a quasi-judicial proceeding ..." *United Gas Pipe Line Co. v. Federal Power Comm'n,* 181 F.2d 796, *cert. denied,* 340 U.S. 827, 71 S.Ct. 63, 95 L.Ed. 607 (1950), that view is no longer valid. *See Investment Company Institute v. Board of Governors,* 551 F.2d 1270, 1276–1277 (D.C.Cir.1977). Review statutes covering "orders" have been extended now to cover regulations, informal rulemaking, informal adjudications, and any other decision capable of review on the basis of an agency record of any kind, sufficient or insufficient.

Suburban O'Hare devotes much effort to asserting that the legislative history of the APA indicates that Congress intended that trial type hearings would be required when a party asserts that an agency's decision is based on disputed issues of fact. Even Suburban O'Hare concedes, however, that its argument is foreclosed by the Supreme Court's decision in *Citizens to Preserve*

**1032**

*Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).[21] That identical suggestion was strongly rejected by the District of Columbia Circuit in *The Izaak Walton League of America v. Marsh,* 655 F.2d 346, 362 and n. 38 (D.C. Cir.1981). This Court rejects Suburban O'Hare's argument as well because it suggests too much: in essence, it inevitably leads to the conclusion that any time a party merely alleges that the agency's administrative record is insufficient, or that it is based on disputed fact issues, a special judicial review statute that vests exclusive jurisdiction in the Court of Appeals is immediately set aside in favor of jurisdiction in the district court.

■ In the aftermath of the Supreme Court's decision in *FCC v. ITT Industries, Inc.,* it is clear that where an agency conducts inadequate fact finding procedures resulting in an administrative record based on substantial disputed issues of fact, the appropriate remedy is not *de novo* fact finding in the district court, but remand by the Court of Appeals to the agency, where the agency can provide adequate additional fact finding under its statutory mandate. *See Vermont Yankee v. Natural Resources Defense Council,* 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978). Another alternative, suggested by the Supreme Court in *FCC v. ITT World Communications, Inc., supra* 104 S.Ct. at 1940, is the appointment of a special master by the Court of Appeals. *See* 28 U.S.C. § 2347(b)(3). In any event, where Congress has selected and mandated jurisdiction in the Court of Appeals, the appropriate forum for judicial review of a challenged agency decision cannot shift from the Court of Appeals to the district court depending upon the adequacy or inadequacy of the administrative record.

### CONCLUSION

For the reasons set forth in this Opinion, this Court holds that jurisdiction to review

the November 14, 1984 FAA decision vests exclusively in the Court of Appeals under 49 U.S.C. § 1486 in the first instance and that this Court lacks jurisdiction. Accordingly, the complaint is dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

---

**21.** Nonetheless, it proceeds to suggest that this Court should overrule the *Overton Park* decision of the Supreme Court because it is allegedly

unconstitutional. Needless to say, this Court politely declines such a bold invitation.