**Nikki M. GOLUBA, Plaintiff,**

v.

**The SCHOOL DISTRICT OF RIPON, a municipal corporation, and Roland Alger, Defendants.**

Civ. A. No. 93–C–244.

United States District Court, E.D. Wisconsin.

March 15, 1994.

David Goluba, Ripon, WI, for plaintiff.

Ronald J. Kotnik, Lathrop & Clark, Madison, WI, for defendants.

## DECISION AND ORDER

REYNOLDS, District Judge.

■ Plaintiff Nikki Goluba ("Goluba"), a student at Ripon High School, commenced this action on March 10, 1993, seeking to enjoin school authorities from including a religious prayer in the school's May 1993 commencement proceedings, on the ground that such a prayer would violate the Establishment Clause of the First Amendment (as applied to the states via the Fourteenth). On April 26, 1993, pursuant to a stipulation of the parties, the court entered an order permanently enjoining defendants "from authorizing, conducting, sponsoring or intentionally allowing or permitting religious prayer to be conducted at school commencement proceedings." Goluba now claims that defendants violated this order by failing to prevent certain students from reciting a prayer minutes before the commencement proceedings began.

For reasons set forth below, the court concludes that defendants did not violate the injunction, and Goluba's motion for a finding of civil contempt will therefore be denied.

### I. Facts

On May 10, 1993, in response to the court's injunction, the Board of Education ("the School Board") of the School District of Ripon adopted the following policy with respect to prayer at commencement proceedings:

> Any formal graduation exercises planned by the administration will emphasize secular commemoration of student course of study achievements and will not include a religious invocation or benediction or any other component reasonably interpreted as a school-sanctioned prayer activity.

(July 27, 1993 Heckman Aff., Ex. A.) Several days later, two students who objected to the policy began circulating a plan to recite the "Lord's Prayer" at 1:55 p.m. on May 29, five minutes before commencement was scheduled to begin. On May 27, defendant Roland Alger ("Alger"), the principal of Ripon High School, learned of the students' plan from a radio reporter. (July 24, 1993 Alger Aff. at ¶ 2.) Alger says he told the reporter "that since the plan was not part of the ceremony, I did not know if there would be a conflict with the injunction entered by the court." (Id.)

On May 28, the day before commencement, articles on the students' plan appeared in local papers. (Heckman Aff., Ex. C; June 11, 1993 David Goluba Aff., Ex. 1.) On the same day, according to Goluba, a local radio station reported that Alger had said that the planned prayer would be a "lawful act." (David Goluba Aff. at ¶ 7.) Alger denies making that statement. (Alger Aff. at ¶ 3.)

Shortly before 2:00 p.m. on May 29, pursuant to school official's instructions, the graduating students formed lines on the school's athletic field, where commencement was to be held. At that point, according to Goluba, a single student began distributing leaflets containing the Lord's Prayer, and shortly thereafter "certain members of the graduating class" recited the prayer. (June 11, 1993 Nikki Goluba Aff. at ¶¶ 4, 5.) School officials did not advise the students that prayer would not be permitted at commencement, made no effort to prevent the students from reciting the prayer or to stop them after they began, and did not discipline those who recited it.

At the time the prayer was recited, the audience had arrived and was seated, the school band and choir were in their assigned positions on the field, and Alger was standing behind a raised speakers' platform about 60 yards from the lines of graduating students. (Nikki Goluba Aff. at ¶ 7.) Also about 60 yards from the graduating students, but standing on the platform, were Thomas Stellmacher ("Stellmacher"), president of the School Board, and Michael Heckman ("Heckman"), the Superintendent of Schools. (Heckman Aff. at ¶ 5; July 23, 1993 Stellmacher Aff. at ¶ 2.) Alger, Stellmacher, and

Heckman say that although they were aware of the student's plan to recite a prayer before commencement, they did not see or hear, and were not told of, anyone distributing material or reciting a prayer. (Alger Aff. at ¶¶ 6–8; Heckman Aff. at ¶¶ 10–12; Stellmacher Aff. at ¶¶ 4–6.)

## II. Analysis

To prevail on her motion for a finding of contempt, Goluba must prove "by clear and convincing evidence" that defendants violated the court's injunction. *Bartsh v. Northwest Airlines, Inc.*, 831 F.2d 1297, 1303 n. 3 (7th Cir.1987); *Shakman v. Democratic Org. of Cook County*, 533 F.2d 344, 351 (7th Cir.), *cert. denied,* 429 U.S. 858, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976). Before examining the evidence Goluba has presented, however, it is first necessary to resolve a dispute over the proper interpretation of the injunction, which reads in full:

IT IS HEREBY ORDERED that the defendant, School District of Ripon, and its officers, agents, servants, employees and all of those persons in active concert or participation with it, shall be, and hereby are, permanently enjoined and restrained from authorizing, conducting, sponsoring or intentionally allowing or permitting religious prayer to be conducted at school commencement proceedings.

(Apr. 26, 1993 Permanent Injunction.)

Defendants contend that the injunction should be not be interpreted to prohibit conduct not prohibited by the Establishment Clause ("Congress shall make no law respecting an establishment of religion") or, more specifically, by *Lee v. Weisman,* —— U.S. ——, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992), which held that the clause forbade a high school principal from inviting a rabbi to deliver a religious prayer at the school's graduation ceremony. Goluba contends, however, that defendants, having consented to the injunction, are bound by its terms, regardless of whether they are narrower or broader than the requirements of the Establishment Clause. The court agrees with Goluba that it is the injunction, not the First Amendment, that directly governs defendants obligations in this case. *Alliance to End Repression v. City of Chicago,* 742 F.2d

1007, 1011 (7th Cir.1984). It is equally true, however, that any interpretation of the injunction may, or perhaps must, be informed by the requirements of the constitutional provision upon which the injunction is based. *Id.* at 1016.

■ Interpretation is necessary in this case because the injunction does not precisely define what level of school involvement is minimally necessary to trigger its prohibitions. The prohibition reaching the least involvement on the part of school officials, and the one upon which Goluba principally relies, is that against "intentionally allowing or permitting" religious prayer at commencement. But the word "intentionally" in this phrase is susceptible to at least two interpretations. It could simply mean "knowingly," the interpretation Goluba implicitly endorses. If so, defendants are forbidden from allowing prayer whenever they know they are allowing it. On the other hand, "intentionally" could mean "purposefully" or "deliberately," in which case defendants would be forbidden from allowing prayer only when they do so with the purpose or intent that it occur.

Either interpretation is plausible, but the latter is to be preferred in this case because it better reflects Establishment Clause jurisprudence. Fundamental to this jurisprudence, to the clause itself, is the idea that the state may not "endorse," or place its "imprimatur" on, a particular religion or religion in general. *Hedges v. Wauconda Community School Dist. 118,* 9 F.3d 1295, 1299 (7th Cir.1993); *Sherman v. Consolidated School Dist. 21,* 8 F.3d 1160, 1166 (7th Cir.1993). A school does not cross this threshold of endorsement merely by failing to suppress religious speech on its premises, for we do not bow to the "misconception that whatever speech the school permits, it espouses." *Hedges,* 9 F.3d at 1299; *Sherman,* 8 F.3d at 1166. Rather, whether a school's allowance of religious speech implies its endorsement of the speech depends on the circumstances under which the speech is allowed. *See Berger v. Rensselaer Central School Corp.,* 982 F.2d 1160, 1169–71 (7th Cir.), *cert. de-*

*nied,* —— U.S. ——, 113 S.Ct. 2344, 124 L.Ed.2d 254 (1993).

Endorsement thus requires something more than the knowing allowance of prayer on school premises. To interpret the instant injunction as prohibiting defendants from "knowingly" allowing student prayer at commencement is therefore to divorce the injunction from the concept of endorsement. Perhaps that would be necessary were there no other way to interpret the injunction's use of "intentionally," but there is, as already noted, another way. If "intentionally" is read to mean "purposefully," then defendants are prohibited from "allowing or permitting religious prayer" at commencement only under circumstances indicating a purpose or intent on their part that prayer occur. This, the court concludes, is how the injunction must be interpreted.

Turning to the evidence in the record, it is undisputed that school officials knew prior to the day of commencement that certain students planned to recite the Lord's Prayer shortly before commencement began. It also is undisputed that the officials did nothing to discourage the students' plan.

There does appear to be some question, however, as to whether Alger, the principal, made a statement tacitly encouraging the prayer. In support of her contempt motion, Goluba submitted the affidavit of her father-attorney, who (apparently heedless to the danger of his dual role as attorney and witness) states that a Ripon radio station quoted Alger as saying that the planned student prayer would be a "lawful act." (David Goluba Aff. at ¶ 7.) Alger insists, however, that he only expressed uncertainty as to whether the prayer would conflict with the injunction. (Alger Aff. at ¶ 2.) Goluba does not actually claim that Alger said what the radio station allegedly reported him as saying, and her reply brief indicates, by omission, that she does not dispute his assertion as to what he actually said. (Aug. 4, 1993 Pl.Reply at 3–4.)[1] The court takes it as undisputed, therefore, that Alger told a radio reporter he was uncertain about whether the prayer would

---

1. Absent an affidavit by the radio reporter, furthermore, the station's quotation of Alger is inad-

missible hearsay. Fed.R.Evid. 801(c), 802.

violate the injunction, not that he thought the prayer would be lawful.

It also is undisputed that shortly prior to commencement a single graduating student distributed literature containing the Lord's Prayer, whereupon "certain members of the graduating class" recited the prayer. (Nikki Goluba Aff. at ¶¶ 5, 6.) The only evidence as to the conspicuousness of this activity comes from the three school officials, Alger, Stellmacher, and Heckman, each of whom insists he did not know at the time that a prayer was being recited. Goluba has presented no evidence to rebut their assertions. She herself was able to observe or hear the prayer presumably because of her proximity to those reciting it. Her father also says a prayer was recited but does say, and there is no indication, whether he knows because he was able to observe the prayer from his place among the audience or because his daughter told him (in which case he lacks personal knowledge of the fact). There is no evidence as to whether any other member of the audience or other students observed the prayer or as to the extent of any disturbance caused by recitation of the prayer. Goluba's statement that only "certain members of the graduating class" recited the prayer suggests the disturbance, if any, was slight, particularly since the prayer was recited as the graduates gathered, a time, presumably, of considerable commotion anyway.

Finally, it is undisputed that school officials did not try to stop the prayer once it began and did not discipline the students who recited it. The relevance of these facts is questionable, however, in the absence of evidence that recitation of the prayer was noticeable to the officials or the general audience or that it in any way disturbed or interfered with the commencement proceedings.

Based on the foregoing facts (Goluba does not claim there are any others bearing on her motion), the court concludes that Goluba has not adduced clear and convincing evidence that defendants violated the injunction. The school officials' failure to attempt to prevent the prayer did not constitute "authorizing," "conducting," or "sponsoring" the prayer, as the injunction forbids. Each of these prohibitions contemplates some *affirmative* action, as opposed to inaction, tending to facilitate or promote prayer. Further, Alger's statement to a radio reporter that he was uncertain as to whether the planned prayer would run afoul of the injunction did not amount to his "authorizing" the prayer, because authorization in this context connotes something more than an equivocal, informal, and unqualified opinion as to an act's legality.

The real question, therefore, is whether defendants can be said to have violated the injunction's prohibition against "intentionally allowing or permitting religious prayer." The answer depends, as noted above, not on whether defendants allowed the prayer in the sense of failing to prevent it—they surely did that—but on whether they allowed it under circumstances indicating an intent or purpose that it occur. The court's conclusion that the circumstances in this case did not indicate such an intent or purpose is based first on the fact that the school, not long before the 1993 commencement, had adopted an unambiguous policy against including anything "reasonably interpreted as school-sanctioned prayer activity" in commencement proceedings, thereby implicitly "disclaim[ing] endorsement" of any prayer that did occur. *See Hedges*, 9 F.3d at 1299. Indeed, the students' prayer plan, accompanied by a petition drive, was publicized in newspaper accounts as a reaction against the school's policy. (David Goluba Aff., Ex. 1; Heckman Aff., Ex. C.) In this context, the school's failure to denounce the plan cannot have been reasonably construed as official support for it.

This is not to suggest that, having ostensibly foresworn religious prayer at commencement, school officials were then free to sit back and do nothing as students turned graduation into a revival meeting; inaction under such circumstances would almost certainly imply school officials' approval. But nothing of the sort is alleged to have happened in this case. Absent some evidence that the student-led prayer was conspicuous to school officials or to the general audience, the court cannot conclude that the school officials' fail-

ure to respond implied an intent or purpose on their part that the prayer occur.

**IT IS THEREFORE ORDERED** that Goluba's June 14, 1993 motion for a finding of civil contempt is DENIED.